**BROCKTON TAUNTON GAS COM-
PANY, Petitioner,**

v.

**SECURITIES AND EXCHANGE COM-
MISSION, Respondent,**

and

Eastern Gas and Fuel Associates,
Intervenor.

No. 7036.

United States Court of Appeals
First Circuit.

June 28, 1968.

718

Cameron F. MacRae, New York City, with whom Taylor R. Briggs, New York City, William L. Cary, New York City, Robert W. Meserve, Richard L. Brickley, Boston, Mass., LeBoeuf, Lamb, Leiby & MacRae, New York City, Nutter, McClennen & Fish, and Brickley, Sears & Cole, Boston, Mass., were on brief, for petitioner.

Philip A. Loomis, Jr., General Counsel, with whom David Ferber, Solicitor, Roger S. Foster and Donald M. Feuerstein, Special Counsel, and Frank N. Fleischer, Washington D. C., Attorney, were on brief, for respondent.

Hans F. Loeser, Boston, Mass., with whom Allen Martin, Jamaica Plain, Mass., and Foley, Hoag & Eliot, Boston, Mass., were on brief, for intervenor.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In this proceeding Brockton Taunton Gas Company (Brockton) petitions for review of an SEC order approving certain acquisitions of its common stock by Eastern Gas and Fuel Associates (Eastern). Brockton is a Massachusetts gas company whose service territory adjoins that of Boston Gas Company, a wholly owned utility subsidiary of Eastern. Eastern's objective is to gain control of Brockton so that Boston and Brockton can be operated as a coordinated and integrated utility system. Because of its ownership of Boston, Eastern is an "affiliate" within the meaning of the Public Utility Holding Company Act and under § 9(a) (2) of the Act, 15 U.S.C. § 79i(a) (2), Commission approval is required before Eastern can acquire directly or indirectly 5% or more of the voting securities of any other public utility company.

At the time of the filing of its application Eastern already held through another wholly owned subsidiary approximately 4.9% of Brockton's common shares and also had an option to purchase approximately 4.2% more from the "Broctaun Trust" so-called.[1] Further, it appears that a pension trust allegedly controlled by Eastern owned an additional 1.4% of Brockton's common stock. Eastern sought approval to exercise the option from Broctaun Trust and also to make a tender offer to acquire additional shares from Brockton's shareholders.[2]

The Act provides *inter alia* that the Commission shall not approve the acquisition of securities of a utility or holding company unless it finds that "such acquisition will serve the public interest by tending towards the economical and efficient development of an integrated public-utility system." 15 U.S.C. § 79j (c) (2). The Commission assumed but did not find that the Broctaun Trust arrangment constituted a violation of § 9 (a) (2) of the Act but accepted the recommendation of its Corporate Division that it would be in the public interest to grant the application.[3] It then regarded the pension trust holdings as *de minimis*.

1. Originally Eastern took a six months option from an investment company known as United Corporation. When it became apparent that due to the opposition of Brockton's management, SEC approval was unlikely during the option period, a trust known as the Broctaun Trust was created to which Eastern assigned its rights. This trust then gave Eastern a new option that could be exercised after SEC approval had been obtained.

2. The application was opposed by Brockton's management which, although owners of only 22% of Brockton's stock, controls the company as a result of a by-law providing for staggered elections of its directors. Brockton participated fully in the hearings before the Commission but without formal intervention as a party.

3. Both Boston and Brockton are already exempt from the Act under the intrastate exemption provision. 15 U.S.C. § 79c

Brockton's petition for review poses two substantial questions. (1) If the Commission finds that an acquisition subject to 9(a) (2) of the Act is in the public interest, is it nevertheless required to disapprove said acquisition if the applicant has violated 9(a) (2)? (2) Is the Commission's finding of substantial economies supported by substantial evidence? This in turn depends on whether the president of Eastern was legally competent to testify as to the effect that integration of Brockton and Boston would have on the wage structure of the system.

Brockton contends that the Commission's findings are inadequate because it assumed that there had been violations of § 9(a) (2) but did not make any actual finding to that effect. It is clear, however, that Brockton had not been harmed by the fact that the existence of violations was assumed rather than decided. N.L.R.B. v. Erie Resistor Corp., 373 U.S. 221, 236–237, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963).[4] Accordingly, we conclude that Brockton's argument is but an oblique version of its more fundamental position that the existence of prior § 9(a) (2) violations must

inevitably lead to denial of the application for approval.

In support of this latter proposition Brockton appeals only to § 26(b) of the Act.[5] We think this section is inapplicable inasmuch as it deals only with the effect of such violations on private contract rights. Here the Commission is merely authorizing Eastern to acquire securities under § 10 of the Act. It is not concerned with whether Eastern had a contract right to acquire these securities. Thus, it was not called upon to apply § 26(b). Goldstein v. Groesbeck, 142 F.2d 422, 427 (2d Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590 (1944), suggests this interpetation of § 26(b) which is at least consistent with the Commission cases primarily relied on by the parties. Virginia Public Service Co., 14 S.E.C. 406 (1943); NY PA NJ Utilities Co., 16 S.E.C. 688 (1944).[6]

Petitioner also suggests that even if the Commission could in its discretion approve these acquisitions, there has been abuse of discretion here. We could agree with this contention only if we found that the Commission's action

---

(a) (1). The Commission also ruled that with certain qualifications the integrated system would retain this exemption. Commissioner Budge dissented principally because he felt that in light of the trust arrangement, granting of the application would be to "ratify and implement a studied violation of the law." He emphasized that the trust was but a "straw"; that since Eastern could direct the sale of the optioned shares and had agreed to assume the risk of a decline in the market price, it already had control and dominion over them without prior approval of the Commission.

4. While refusing to decide the issue in this case, the Commission announced that it would deal with this problem generally by virtue of its rule-making power and has since adopted Rule 51.

5. 15 U.S.C. § 79z. *Validity of contracts*
" * * *
(b) Every contract made in violation of any provision of this chapter or of any rule, regulation, or order thereunder, and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of

any relationship or practice in violation of, any provision of this chapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, regulation or order."

6. But cf. Virginia Public Service Co., supra at 450: "It is the general rule that money paid under an illegal and void contract cannot be recovered in an action for money had and received. See Thomas v. City of Richmond, 12 Wall. 349, 79 S.Ct. 349, 20 L.Ed. 453 (1870). This rule is applied with additional rigor where the contract is void because expressly forbidden by a statute designed to protect a broad public interest and not merely private rights. Here we have such a contract and such a statute."

was without rational basis. American Power & Light Co. v. S.E.C., 329 U.S. 90, 118, 67 S.Ct. 133, 91 L.Ed. 103 (1946). On the record before us we cannot so find. The Commission found that the acquisitions here in question were not detrimental to the public interest as that term is used in § 10 of the Act. In reaching this determination it emphasized the following points. (a) Eastern acted in good faith as evidenced by prompt application to the Commission for approval. (b) The questioned transaction involved only a single institutional investor and did not involve any change of position on the part of any other security holders of Brockton. (c) The proposed acquisition otherwise satisfied the statutory standards.

Also, it specifically found that the integration of the utility system would result in substantial economies. It is petitioner's position that any such economies would be offset by wage increases resulting from the proposed integration and that the Commission's finding to the contrary is not supported by substantial evidence. There was expert testimony from both sides on this vital issue. Brockton asserts that Eastern's expert, its president, one Eli Goldston, was not qualified as an expert on labor costs; that the Commission erred as a matter of law in admitting his testimony and that therefore the testimony of its expert should have been regarded as undisputed.[7] We do not agree with this contention. In our opinion Goldston's professional credentials are impressive.[8]

Petitioner avers that self-serving general statements of an official such as Goldston are in effect no evidence at all, citing Scenic Hudson Preservation Conference v. F.P.C., 354 F.2d 608, 619 (2d Cir. 1965), cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966). It is clear from Goldston's testimony, however, that he was not speaking in generalities and that his testimony was based on matters quite within his competence. It was also contended that the proposed integration would result in increased labor costs because wage levels in Boston were higher than those prevailing in Brockton. But Goldston pointed out: (1) that Brockton's existing labor contract prevents this problem from arising in the immediate future; (2) a wage differential can be maintained by a unionized company serving both areas; witness the experience of the New England Telephone and Telegraph Company, and (3) this differential is progressively disappearing anyway as the Brockton area becomes more absorbed economically into Greater Boston.[9]

Although the testimony with reference to substantial economies was disputed the Commission resolved the conflict in favor of Eastern. Petitioner cannot now say that in reality it presented the only expert, especially in view of the fact that it did not challenge Goldston's credentials before the Commission. Indeed before the Commission petitioner's own counsel, with specific reference to Goldston, argued that "the whole consideration on both sides goes to the weight of

---

7. Petitioner's expert was Francis X. Asselin of Stone & Webster, Inc. It is undisputed that he is amply qualified to give expert testimony in these matters.

8. In addition to his educational preparation, four degrees from Harvard University in the areas of business and law, he had seventeen years of experience as a lawyer and executive in corporate affairs. While president of Eastern he has served as director of the First National Bank of Boston and the Raytheon Company, among others. Prior to this Goldston practiced law for thirteen years spe-

cializing in business and corporate work. This included extensive experience in the fields of corporate acquisitions, mergers and finance.

9. We do not agree with petitioner's contention that these arguments are inconsistent. Eastern's position is merely that in due time the area differential will disappear as a result of matters unrelated to the integration proposed here; that meanwhile the differential can exist between the companies concerned whether they are integrated or not.

the testimony rather than to its competence."

In any event it appears that the traditional opinion rule does not apply in administrative proceedings. 2 K. Davis, Administrative Law § 14.13 (1958). See Administrative Procedure Act, 5 U.S.C. § 556(d) "Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence." Accord, S.E.C. Regulations, 17 C.F.R. § 201.14; F.T.C. v. Cement Institute, 333 U.S. 683, 705–706, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). Thus, it clearly appears that petitioner's contention that only the testimony of its expert was properly before the Commission falls and with it falls its contention that the Commission's findings are not supported by substantial evidence.

A decree will be entered affirming the order of the Commission.