STRATHMORE SECURITIES, INC., Al-
dus H. Turner, Jr., Ronald D. Turner
and T. Theodore Turner, Petitioners,

v.

The SECURITIES AND EXCHANGE
COMMISSION, Respondent.

No. 21520.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 18, 1968.

Decided Jan. 24, 1969.

Mr. Alan Kay, Chicago, Ill., for peti-
tioners. Mr. Stanley I. Bregman, Alex-
andria, Va., also entered an appearance
for petitioners.

Mr. Jacob H. Stillman, Special Coun-
sel, Securities and Exchange Commis-
sion, with whom Mr. Philip A. Loomis,
Jr., General Counsel, and Mr. Walter P.
North, Associate General Counsel, Se-
curities and Exchange Commission, were
on the brief, for respondent.

Before BAZELON, Chief Judge, and MC-
GOWAN and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

This statutory review proceeding is
brought to overturn an order of the Se-
curities and Exchange Commission en-
tered under Sections 15(b) and 15A of
the Securities Exchange Act, 15 U.S.C.
§§ 78o(b), 78o-3. The Commission
found that petitioners had violated vari-
ous provisions of the statutes adminis-
tered by it, and it imposed certain penal-
ties affecting the capacity of each of pe-
titioners to continue in the securities
business. The attack upon the order
made here does not go to its merits on
the record as made, but asserts rather
that the order is fatally infected by a
failure of procedural due process. This
is said to reside in the circumstances un-
der which petitioners' books and records
were taken into the Commission's posses-
sion and allegedly not thereafter made
adequately available to petitioners to pre-
pare their defense.[1] Although there

1. The books and records are those of
petitioner Strathmore Securities, Inc., a
corporation which engaged in the se-
curities business in Pittsburgh as a reg-
istered broker-dealer. Petitioner A.
Turner was an officer of Strathmore, and
petitioners R. Turner and T. Turner were
registered sales representatives employed

emerge from the record before us some premonitory signals about the difficult problems that can be involved where an agency takes over books and records for investigatory purposes and, without returning them, ultimately uses them in requiring the owner to respond in a complaint proceeding, they do not warrant a finding that petitioners in this case have been deprived of due process.[2]

I

The charges against petitioners grew out of the distribution of some unregistered securities in 1960 and subsequent transactions involving them over the ensuing two years. In the latter part of 1963 the Commission's Division of Trading and Markets began to look into the matter. In February, 1964, in the course of an investigation of the affairs of the issuing company, one of the Division's investigators asked that certain business books and records of petitioner Strathmore be turned over, and this request was voluntarily complied with upon the written understanding that they would be returned within thirty days, or earlier upon request. In May, more books and records were made available on the same basis.

It is represented to us that petitioner Strathmore tried repeatedly to get these papers back, but that the Commission representatives would not honor their undertakings. The Commission tells us that this is not so. There is no evidentiary record before us, nor any findings after hearing, by reference to which we may determine precisely what the facts are in this regard. The only record we have is that compiled in the proceedings following upon the filing of formal charges against petitioners on January 7, 1965; and it is upon that record only that we appraise the validity of the order as against the attack here made upon it. What follows immediately hereinafter with respect to the precomplaint period is offered simply as an apparently accurate chronology of the events of that period, with incidental references to the frequently conflicting, and essentially untested, assertions of the parties.

Subsequent to the transfer of the books and records to the Division by agreement in February and May of 1964, a subpoena was, in aid of the Division's investigation, directed to issue in August of that year to petitioner A. Turner. The Commission asserts that, in arranging for a delay in the giving of testimony under this subpoena, petitioners' counsel professed to need only two weeks' access to the records to prepare Mr. Turner for his appearance. The Commission further says that it accordingly transported the records from Washington to Pittsburgh where they were available for examination in the

by Strathmore. The order under review revoked Strathmore's broker-dealer registration and expelled it from the National Association of Securities Dealers, Inc. A. Turner was barred from further association with any broker or dealer, and the remaining two petitioners were suspended from any such association for 90 days.

2. An issue is also tendered by reason of petitioner A. Turner's invoking his privilege against self-incrimination when called as a witness by the staff, and his failure to appear as a witness in his own defense. The staff urged the examiner to draw an inference that Turner's testimony would have been adverse to petitioners. See N. Sims Organ & Co. v. SEC, 293 F.2d 78 (2d Cir. 1961), cert. denied, 368 U.S. 968, 82 S.Ct. 440, 7 L.Ed.2d 396 (1962). Petitioners argue that no such inference can properly be drawn in a case where, as here, the failure to testify was founded upon the privilege. They also assert that the proceeding against them was at least quasi-criminal in nature— a characterization disputed by the Commission.

Although the question so raised is a serious and substantial one, see Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), we do not reach the merits of it here because (1) the examiner stated clearly that his findings did not need the support of the inference and (2) the Commission in its opinion explicitly disclaimed any reliance upon it. Our reading of the record gives us no basis to doubt the genuineness of these assertions, since the inference is in fact not necessary to the findings.

Federal Building from September 27 to October 16,[3] and that when Mr. Turner appeared to testify on October 20, he merely claimed the Fifth Amendment privilege against self-incrimination and not any due process disadvantage from unduly restricted access to the records. On November 1, 1964, the records themselves were placed under subpoena.

A few days after the complaint order issued (which designated February 1, 1965, for the beginning of public hearings in Pittsburgh), petitioners' counsel requested that the records be returned. He was advised that this could not be done, but that the records would again be made available for inspection in the Federal Building in Pittsburgh at all hours of the day and night. This arrangement he rejected.

When the hearing opened on February 1, a motion was made for return of the records, to suppress their use as evidence, and for a postponement of the hearing. It was represented that petitioners were unable to defend themselves properly because of the inaccessibility of the records. The Division's offer to exhibit the records in Pittsburgh on the terms just described was renewed, but delivery of them into petitioners' exclusive possession was said to be impossible for two reasons. One was that the records were being held under a subpoena in the context of a continuing investigation. The other was that they were needed for the preparation of charts and schedules reflecting the voluminous stock transactions reported in the records, which charts and schedules would, in accordance with the normal custom in matters of this kind, be put in evidence instead of the records.

The hearing examiner professed some doubt as to whether he had the power to direct the return of records being held under a Commission subpoena, but he signified his purpose to see to it that there would be a fair hearing and that all parties would have adequate opportunity to see and examine relevant papers. He indicated that, as such questions arose, he would entertain requests for appropriate recesses and continuances. The record shows that in this colloquy petitioners' counsel suggested that the Commission make copies of the records for petitioners' use.

The examiner ultimately denied petitioners' motion on the ground that he lacked legal authority to return subpoenaed documents. In doing so, he reminded petitioners that they were free to address their motion to the Commission itself; this invitation was not accepted. He also expressed interest in the possibility of making copies of the documents. A Commission representative present expressed his willingness to pursue the matter with his superiors, particularly with respect to the availability of funds to pay for the copying, and petitioners' counsel expressed himself as ready to leave the matter in that posture for the time being.

Counsel for the Division later reported that the funds available were limited, and that, accordingly, the records would have to be returned to Washington where the job could be done more cheaply. Subject to this inconvenience, he was ready to get the project under way and to begin

---

3. Division counsel represented to the examiner in the complaint proceeding that petitioners devoted two hours and 27 minutes to looking at the records during the first week of this period, eight hours and 25 minutes during the second week, and none during the third week. Petitioners now allege somewhat vaguely that they were then preparing only for A. Turner's testimony in an investigation, as distinct from a complaint proceeding, and that, in any event, the conditions for examination of the records at the Federal Building were unsatisfactory, largely because a Division representative was on hand. They allege that joint access to the records generally was insufficient, and that they ought to have been permitted to examine the records in the privacy of their own office. The Commission's opinion notes, however, that the custodian had been instructed to withdraw when the examination of the papers by petitioners was going on, and that no meaningful claims of interference were ever made.

supplying copies to petitioners. A lengthy recess was impending, and the hearing examiner directed both sides to confer on what copies were needed, with a view to utilizing the recess for this purpose. Petitioners' counsel stated that this approach was wholly in keeping with his needs.

When the hearing resumed after the recess, it appeared that petitioners' counsel had agreed to accept, in lieu of copies of the records themselves and subject to spot checking, copies of the charts and schedules compiled from such records which were the exhibits to be introduced in evidence. These exhibits were in fact presented to petitioners' counsel in advance of introduction, and the examiner directed the Division to be prepared to make the underlying records available upon request and to explain the way in which information in the records had been translated into the exhibits. Petitioners' counsel subsequently stipulated on the record that, except that as a specific error was identified, he offered no challenge to the exhibits in respect of their accuracy *vis-a-vis* the subpoenaed books and records.

At a time when the Division's case had largely been presented, the hearings were in recess from May 6 to June 21. The examiner notified counsel before recessing that, because of the length of the projected adjournment, he expected the proceeding to go steadily forward to completion upon reconvening. Upon resumption of the hearing, however, petitioners' counsel pleaded lack of opportunity to prepare, and asked for a further recess until July 6. That request was not opposed, and the examiner granted it. But, on July 7 when the Division finished its case, petitioners announced that they would offer no defense because they had been unable to prepare one due to the denial to them of reasonably adequate access to their books and records. No further time, however, was requested.

## II

The Commission in its findings and opinion recognized that "the staff's re-

tention of [petitioners'] books for the period involved here does raise a question whether the period of retention was reasonable." It resolved that question against petitioners on the basis of an asserted failure by petitioners to show prejudice flowing from their failure to gain unrestricted access. It stressed in this regard the making of the books and records available in the Federal Building in Pittsburgh prior to the initiation of the complaint proceedings, the frequent and prolonged recesses (aggregating 120 days in all) in those proceedings, and the acceptance by petitioners of the accuracy of the exhibits made up from the information contained in the books and records.

We are not prepared to say that the Commission erred in this conclusion—a result due in no small part to the sensitivity of the hearing examiner to the problem and the patience with which he strove to ameliorate it. A reading of the record does not persuade us that petitioners felt themselves as handicapped at the time as they now profess to have been. Finally, the case most relied upon by petitioners for the proposition that subpoenaed property must be returned within a reasonable time, also remarked, apropos of a similar claim that the preparation of a defense was fatally hindered, that the Government's action in "[offering] free and unrestricted inspection of these records while in [its] possession to representatives of the plaintiff cannot be ignored." Bornn v. Page, 14 F.Supp. 767, 768 (E.D.N.Y.1936). We think that the Commission was, on balance, entitled to think that its adjudication of the merits of petitioners' conduct was not nullified by lack of opportunities for petitioners to show how that conduct differed from what it was alleged to have been.

In sustaining the order under review, however, we doubt that the Commission was entirely comfortable with the necessity of turning aside a claim of procedural unfairness by reliance upon the lack of a showing of prejudice. There are highly practical problems presented by the lengthy separation of one under in-

vestigation from his business records prior to his testifying in the investigation and defending at trial. These problems are only accented by the circumstance, as here, of voluntary cooperation with agency investigators who promise in writing to return the papers upon request or within thirty days, and who redeem that promise by procuring the eventual issuance of subpoenas, thereby disabling themselves from abiding by their original commitments.

The detection and punishment of the financial manipulations outlawed by Congress is, to be sure, not simply a graceful minuet trod by willing partners, and those who come under scrutiny cannot be expected to be happy with the attentions showered upon them. But forms of fairness are not to be lost sight of in reliance upon an ultimate defense that substance has not suffered, and this record suggests that the Commission would do well to take some thought, through the issuance of regulations or otherwise, of the manner in which private papers are received and administered during investigations and hearings of charges. It is surely not a wholly satisfactory state of affairs for the briefs before us to be replete with contradictory non-record assertions by both sides as to the pre-hearing history of these papers.

The petition for review is

Denied.