Robert W. NEES, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

William REIGEL, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

Nos. 22487, 22459.

United States Court of Appeals
Ninth Circuit.

July 9, 1969.

Sander L. Johnson, Los Angeles, Cal. (argued) for Nees.

Bernard I. Segal, Los Angeles, Cal. (argued) for Reigel.

David Ferber (argued), Solicitor, Philip A. Loomis, Jr., Gen. Counsel, Donald M. Feuerstein, Asst. Gen. Counsel, Richard E. Nathan, Atty., S. & E. C., Washington, D. C., for appellee.

Before BARNES and CARTER, Circuit Judges and TAYLOR, District Judge.*

BARNES, Circuit Judge:

These two cases, combined on appeal, challenge an order of the Securities and Exchange Commission barring both petitioners from association with any securities broker or dealer. Petitioners, who were salesmen for Century Securities Company, were found to have willfully violated, or to have aided and abetted the violation of, the anti-fraud provisions of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) [1] and §§ 10(b) and 15(c) (1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) [2] and 78o(c) (1). [3]

The securities whose sale triggered the action reviewed here were those of the Jayark Films Corp. (hereafter Jayark),

a distribution organization. Two issues of Jayark are involved; the first lot, but not the second, was registered. During the period petitioners were active in selling Jayark, that company was negotiating with Samual Goldwyn Productions for the acquisition of films for television. When an agreement failed to materialize, Jayark unsuccessfully attempted to make a deal with Paramount Pictures Corporation.

The hearing examiner found that petitioner Nees was guilty of "a reckless abandonment and disregard of his obligation for fair dealing in accordance with the standards of the profession" in his sales of a speculative and unregistered security, and that petitioner Reigel, in selling the registered security, made statements "hardly in accord with the facts." The Commission affirmed, pointing out, in regard to petitioner Reigel, that, although he did not sell any unregistered Jayark securities to the public, he "was active in obtaining * * * [unregistered] shares for registrant and must have known that registrant, which was making a market * * * was acquiring the shares with a view to distribution."

---

* Honorable Fred M. Taylor, United States District Judge, Boise, Idaho, sitting by designation.

1. "(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
 (1) to employ any device, scheme, or artifice to defraud, or
 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." (15 U.S.C. § 77q(a).)

2. "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." (15 U.S.C. § 78j(b).)

3. "(c) (1) No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange, by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall, for the purposes of this subsection, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent." (15 U.S.C. § 78o(c) (1).)

Because petitioners' claims are disparate, we consider them separately, predicating our jurisdiction to review on 15 U.S.C. §§ 77i and 78y.

## The Appeal of Robert W. Nees

According to the Commission's opinion, petitioner Nees did not appear at the initial proceeding conducted before the hearing examiner on Aug. 9, 25, 26 and 27, 1965. Petitioner had been served with an order for the proceedings and filed an answer to the allegations. However, he did not receive the notice of the hearing which was mailed to the address listed for him with the Commission. Nees had moved out of state, and, although he had left a change of address with the post office, he had failed to notify the Commission of his new address. When he learned that a default judgment had been entered against him, he moved to reopen the record. That application was granted by the hearing examiner on Dec. 3, 1965.

Before the reconvened hearing, petitioner's counsel requested clarification of the record, contending that the evidence previously taken could not be used against petitioner inasmuch as he was entitled to a *de novo* hearing. No specific objection was made to any portion of the record. Petitioner's motion was denied, the hearing examiner pointing out that the order reopening the proceedings "clearly contemplated that the record made at the original hearings would stand against Nees." R.T. at 2010.

The reopened proceedings were conducted on Feb. 14, 1966, Nees appearing by counsel. Two of petitioner's former customers, after confirming their testimony in the record, were extensively cross-examined by petitioner. Petitioner testified in his own behalf.

Petitioner makes two general assignments of error before this court: 1. insufficient evidence existed to prove that petitioner had made fraudulent representations which caused investors to purchase the stock in question; 2. petitioner's right to due process of law was infringed upon when he was refused a *de novo* hearing. Finding no merit in either contention, we affirm the ruling of the Commission.

Petitioner first contends that the Commission's findings of fact are "clearly erroneous," claiming no proof was introduced of any misrepresentations made by petitioner. We find this allegation to be patently without merit. For example, witness Book originally testified as to sales statements made by petitioner which were shown to be misleading, if the hearing examiner believed Book, when those statements were compared with the testimony of Nees' employer. When the proceedings were reopened, Book confirmed his previous testimony and, when examined by petitioner's counsel, reiterated his statements. Witness Heuvel also testified as to the exaggerated claims made for the stock by petitioner and, in the reopened hearing, stated that, if called upon to testify again, his evidence would be the same. On cross-examination, the witness' narrative of the transaction with petitioner was not challenged by the petitioner.

Our scrutiny of the record convinces us that sufficient evidence was introduced to justify the hearing examiner's finding, as affirmed by the Commission, that petitioner willfully violated § 17(a) of the Securities Act and Sections 10(b) and 15(c) (1) of the Exchange Act by his "flagrant misrepresentations and patently unconscionable guarantees" regarding the stock. We reject petitioner's assignment of error on this point.

Petitioner's second point, phrased in terms of due process, is that instead of merely allowing petitioner to cross-examine witnesses who had previously testified against him, the hearing examiner should have completely retried the case as to petitioner. Because we find the reopened proceedings to have been responsive to the mandate of fundamental fairness, we decline to reverse the hearing examiner and the Commission on this point.

Petitioner's argument is that the case against him was built, in part, on the testimony of witnesses appearing at the first but not the second hearing, and upon stipulations agreed to at the initial proceeding. Petitioner fails to name the witnesses who were not available at the second phase of the hearing, outline their testimony, or list the stipulations resulting in this alleged breach of his right to due process. Our examination of the opinions of both the hearing examiner and the Commission reveals no reliance on witnesses not participating in the reopened proceedings. The hearing examiner's finding that petitioner made misleading statements was based on his acceptance of the credibility of the witnesses whose testimony is outlined above. Similarly, the Commission's statement of petitioner's wrongdoing is taken from the testimony of these two witnesses. Additionally, the Commission, considering the objections which are now made to this court, pointed out that petitioner's counsel only requested to cross-examine the two customers testifying against petitioner.

Petitioner neither states what stipulations were used against him or explains how he was prejudiced. Petitioner's reticence on this point may stem from the fact that he was excluded from pre-trial stipulations. In any event, we find no stipulations mentioned with regard to petitioner in the opinion of either the hearing examiner or the Commission.

In Hansen v. SEC, 130 U.S.App.D.C. 45, 396 F.2d 694, cert. denied, 393 U.S. 847, 89 S.Ct. 134, 21 L.Ed.2d 118 (1968), the court was presented with an appeal from an S.E.C. order where the testimonial record of a prior proceeding had been admitted as evidence against the appellant in a subsequent proceeding. The court stated, at 694–695:

"Since the witnesses who testified in the prior proceeding were made available to petitioner for cross-examination, we find no error.

" * * * In a matter such as this one, involving charges of fraud and manipulation in the issuance of stock, with a lengthy record, it was within the Commission's discretion to receive the transcribed testimony, while still comporting with fairness to petitioner by offering the opportunity to cross-examine any witness whose transcribed testimony was so received."

We are in agreement with this result, and find petitioner's contention to be' similarly without merit.

Petitioner is thus left with the argument that his due process rights were abridged because, although he was able to cross-examine the two witnesses testifying against him, he was not present when they were examined directly. We find this to be a specious argument. The crux of the guarantee petitioner relies upon is the right to confrontation. Petitioner was accorded an opportunity to review with each witness the testimony originally elicited and to cross-examine each on what he said. We do not understand, and petitioner does not explain, how he was injured by this process. Petitioner's counsel was able to observe the demeanor of the witnesses and to challenge them on any point of fact or recollection. We find no abuse of petitioner's rights there.

Our conclusion is reinforced by three related facts. First, the standard for admission of evidence in an administrative proceeding is not as stringent as that enforced by courts of law, so long as fundamental fairness is observed. *See, e. g.,* Hansen v. SEC, *supra*; Giant Food Inc. v. FTC, 116 U.S.App.D.C. 227, 322 F.2d 977 (1963), cert. dismissed, 376 U.S. 967, 84 S.Ct. 1121, 12 L.Ed.2d 82 (1964). Second, the fact petitioner did not receive the notice of the initial proceeding was, at least in part, his own fault since he had been notified of the pendency of the proceedings but failed to inform the Commission of the change in his address. Third, petitioner's counsel's original request for relief, made Nov. 5, 1965, some two months after petitioner received notice that a request to enter a default judgment had been filed against him, was that the hearing examiner "reopen hearings in

the above matter so that respondent Nees may *respond* to evidence allegedly against him." C.T. at 1360. (Emphasis added.) In a supplemental affidavit, petitioner requested that "the hearings be reopened to permit him to present his defense to the statements of charges." *Id.* at 1371. Petitioner thus received the relief originally requested.

Finally, petitioner contends that there was a failure of jurisdiction. This statement is not supported by explanation, analysis or citation; it is not the kind of allegation of which appeals are made. We find no merit in it.

■ In our judgment, the proceedings against petitioner were fair and untainted by reversible error. We affirm the ruling of the Commission.

### The Appeal of William Reigel

While at both the prehearing conference and the initial hearing petitioner represented himself, he retained counsel for the subsequent proceedings. Two women customers of Reigel testified against petitioner. Before each took the stand, her recollection was refreshed by a memorandum of interviews she had had with an S.E.C. investigator. On both memoranda were notations added by the investigator after the original interviews. Petitioner, allegedly because he feared questions dealing with prior disciplinary actions, declined to testify. In his opinion, the hearing examiner noted that he inferred from this refusal that the testimony would have been adverse. In review, the Commission stated that this inference had been disregarded.

The hearing examiner recommended petitioner be suspended from association with any broker or dealer for six months. Finding no mitigating factors in petitioner's misconduct, the Commission entered an order against petitioner permanently barring him from association with a broker-dealer.

Petitioner Reigel makes eight assignments of error before this court: 1. the inference drawn by the hearing examiner from petitioner's refusal to testify was improper; 2. the harsher penalty imposed by the Commission was improper; 3. the notations of the investigator appearing on his memoranda which were seen by the witnesses prejudiced petitioner; 4. hearsay evidence was admitted against petitioner; 5. insufficient evidence existed to demonstrate that petitioner sold unregistered stock; 6. insufficient evidence was presented to demonstrate that petitioner violated antifraud provisions of the Securities Act by failing to inform customers of Jayark's financial condition; 7. insufficient evidence was presented to demonstrate petitioner had no reasonable basis for his predictions of Jayark's prospects; 8. petitioner's appearing without counsel at the initial hearing compounded the above errors and increased the inaccuracy of the record.

Finding no merit in any of these contentions, we affirm the opinion of the Commission.

We first consider petitioner's allegation that, although specifically disregarded by the Commission, the inference drawn by the hearing examiner from petitioner's refusal to testify was prejudicial. Petitioner contends that his constitutional rights were abridged because he was given the choice of not testifying or taking the stand and, perhaps, facing a line of questioning which was later found to be irrelevant. We do not find petitioner's reasoning persuasive. In so holding we decline to rule upon the alleged constitutional infringements stemming from the hearing examiner's holding, noting that the objection is arguably mooted by the fact that petitioner, represented by counsel when the proceedings were reopened, did not request a ruling on the line of questioning later determined to have been improper. Petitioner could have either testified or made objection to the ruling at that time.

■ It is sufficient for our present purposes to point out, as did the United States Court of Appeals for the District

of Columbia in Strathmore Sec., Inc. v. SEC, 407 F.2d 722, 723 n. 2 (1969) that:

> "[T]he Commission in its opinion explicitly disclaimed any reliance upon [the fact that the petitioner declined to testify]. Our reading of the record gives us no basis to doubt the genuineness of these assertions, since the inference is in fact not necessary to the findings."

While we are not unmindful of the seriousness of the problem alleged, *cf.* Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), it is the opinion of the Commission, not the examiner, we are reviewing and since that body took no notice of petitioner's refusal, we see no prejudice to him.

Petitioner next contends that it was improper for the Commission to impose a harsher punishment than the hearing examiner, arguing both that the record must have inaccurately reflected the transactions involved, and that the penalty was excessive, arbitrary and capricious.

The burden of proof facing petitioner on this issue is formidable. The scope of judicial review in this area is narrowly defined. "[W]hile recognizing that the Commission's discretion must square with its responsibility[,] [o]nly if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter." American Power & Light Co. v. SEC, 329 U.S. 90, 112–113, 67 S.Ct. 133, 91 L.Ed. 103 (1946). *See* Brockton Taunton Gas Co. v. SEC, 396 F.2d 717 (1st Cir. 1968) where the court stated it would reverse the Commission for an abuse of discretion only if it found the Commission's actions to be "without rational basis." See also Lawrence v. SEC, 398 F.2d 276 (1st Cir. 1968); Vanasco v. SEC, 395 F.2d 349 (2d Cir. 1968).

■ We note that the punishment here is clearly within the statutory prescription, § 15(b) (5) and (7) of the Securities Exchange Act. In our judgment, the findings of the Commission concerning petitioner's culpability are supported by the evidence. *See* discussion *infra.* As this court stated in San Francisco Mining Exch. v. SEC, 378 F. 2d 162, 165 (9th Cir. 1967), "where the established facts empower an administrative agency to take particular remedial action, the determination of whether it should take that action rests within the sound discretion of the agency." This case does not appear to be one where this court "should * * * substitute its judgment of what would be appropriate under the circumstances in place of the Commission's judgment as to measures necessary to protect the public interest." Pierce v. SEC, 239 F.2d 160, 163 (9th Cir. 1956). *See, e. g.,* Dlugash v. SEC, 373 F.2d 107 (2d Cir. 1967); Marketlines, Inc. v. SEC, 384 F.2d 264 (2d Cir. 1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1033, 19 L.Ed.2d 1137 (1968). We are convinced the Commission did not abuse its discretion.

■ Petitioner next argues that he was prejudiced when witnesses testifying against him were allowed to refresh their recollections by reading memoranda prepared by an SEC investigator which contained his personal marginal notations. We find this allegation unsubstantial as measured against both precedent and the context of this case. An investigator for the SEC testified that each witness appearing for the Government was shown a memorandum of an interview an SEC investigator had had with the witness. The investigator stated that *in addition to a summary of* the interview, the memorandum included notations made by the investigator.

We accept for purposes of argument, though no reference to the transcript is made by petitioner's counsel, that witnesses against petitioner were among those who, *before the trial,* read the memoranda. Petitioner's counsel makes no contention that—and our search of the transcript reveals no instance where —witnesses against petitioner used the allegedly "tainted" documents on the stand. The issue thus becomes whether or not a witness may examine such a

memorandum before testifying. We see no reason to rule a witness may not.

We recognize the accepted distinction between past recollection recorded and present recollection refreshed. *Compare* III Wigmore (3d ed. 1940) §§ 735–755 *with* §§ 758–765. The challenged practice here is in the latter category. It seems obvious that under these circumstances, it is the testimony, not the document stimulating recall that is offered as evidence. United States v. Riccardi, 174 F.2d 883, 888 (3d Cir.), cert. denied, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). Under these circumstances, since the witness' ability for recall can be challenged, we see no harm in the pretrial examination of documents such as these—especially since there has been no showing that the witnesses relied upon either memoranda or the notations. *See,* Sayen v. Rydzewski, 387 F.2d 815 (7th Cir. 1967); NLRB v. Federal Dairy Co., 297 F.2d 487 (1st Cir. 1962); *cf.* Goings v. United States, 377 F.2d 753 (8th Cir. 1967). Appellant had ample opportunity to examine the documents, and question the witnesses with respect to them.

■ Petitioner's fourth allegation is that hearsay evidence was admitted against him. Petitioner's contention is that "[t]he findings of the Commission that Reigel had no reasonable basis for representations made by him to buyers concerning Jayark is based *in large part* upon a letter which was clearly hearsay." (Emphasis added.) The letter is from an attorney representing a party owning films for which Jayark negotiated and was written to the Commission's staff. It states that negotiations, conducted during May and June, 1963, were discontinued when an agreement could not be reached.

Assuming both that the letter is hearsay,[4] under the more relaxed standards of administrative proceedings,[5] and that objection to it may be raised now even though it was not made at trial, we find no prejudice. According to our analysis, even if the letter were excluded, sufficient evidence is present in the record to prove petitioner guilty of misrepresentation. *See* discussion *infra.* There was no showing there would be profits accruing to Jayark even if the contract mentioned in the disputed letter had been signed. As the Commission points out, "respondents had no knowledge of the terms of any agreement with Goldwyn, of the nature and quality of the film library, or of any of the other pertinent considerations making for the success or failure of such a venture." C.T. at 2004. Since the uncertainty of profit alone could prove to be the basis for the Commission's holding, any prejudice stemming from the alleged hearsay is harmless error.

■ Petitioner's fifth assignment of error is that insufficient evidence was presented to demonstrate that petitioner violated anti-fraud provisions of the Securities Act by failing to inform customers of Jayark's financial condition. The hearing examiner found that "Jayark had suffered an operating loss of $21,-615 for the five-month period ending October 31, 1962 and that as demonstrated by Jayark's Annual Report for 1963, the company had a deficit of $99,766.47 as of May 31, 1963." C.T. at 1688. Petitioner argues that a salesman is not required to inform a prospective purchaser about facts irrelevant to the would-be purchaser's intent, citing Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 762 (C.D.Colo.1964). His conclusion is that because the purchasers testifying against him were speculating

---

4. Because we are willing to assume the letter to be hearsay, we need not consider the effect of the fact that Jayark's president never claimed to the registrant that the deal, referred to in the letter, had been made.

5. § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d); Hansen v. SEC, *supra;* Brockton Taunton Gas Co. v. SEC, 396 F.2d 717 (1st Cir. 1968); FTC v. Cement Institute, 333 U.S. 683, 705–706, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

on the stock, Jayark's financial position was not material to them. Thus, he claims, there was no obligation on petitioner's part to inform them of Jayark's earnings and deficit position. His evidence that the purchasers were speculating is that neither customer testifying against him attempted to rescind the purchase or sell the shares once the full picture was presented to her.

Our reading of the record convinces us that even if petitioner's argument is valid, he can not gain advantage by it. A partner in petitioner's brokerage firm testified (without challenge) that all salesmen were told that Jayark was operating at a deficit. Despite the fact that petitioner knew of Jayark's losses, one of petitioner's customers testified that, "I asked about the firm; I asked about the status of Jayark, financial status, and his accounting was that everything was absolutely perfect. * * *" R.T. at 141. In response to the question of whether or not petitioner had given "any details with respect to the financial condition of Jayark Films Corporation as to, for example, whether they were making money or not making money?" this witness responded, "He said they were quite stable." *Id.* The witness testified she received no literature about Jayark before buying the stock. The witness stated that she had never purchased a speculative stock, and that she bought the stock because she "understood this was an excellent stock * * *" *Id.* at 151.

A second witness who had purchased Jayark from petitioner testified she received no literature on the stock before purchasing it. This witness asked no questions about the stock other than whether it would double her money in six months, purchasing her shares after petitioner advised her to buy as much as possible.

Further, even if the function of the proceedings were remedial and not the prospective protection of the public, the fact that neither purchaser had sold her Jayark shares at the time of the hearing is inconclusive. The first witness stated she phoned petitioner to talk about disposing of the stock because "it had gone down tremendously." R.T. at 143. Petitioner advised her to hold onto them because Jayark was beginning a revolutionary new project. Petitioner also told the witness "he had sunk all his money into it and he thought that I should not sell any of mine." *Id.* at 145. The second witness testified that because of personal problems "I didn't pay any attention to the stock," relying instead upon friends who were in contact with petitioner. While she was unable to remember, she did not think she talked to petitioner about the sale of her Jayark shares.

On this evidence, we do not find the Commission has committed reversible error by finding petitioner to have violated anti-fraud provisions of the Securities Act.

■ Petitioner next states that there was insufficient evidence that petitioner lacked a reasonable basis for his predictions of Jayark's future growth and success. We find that the Commission was correct in so ruling and summarily reject petitioner's position.

As we have noted, *supra*, petitioner had no way of estimating how profitable the potential Goldwyn contract would prove to Jayark. Additionally, petitioner had no reason to think the agreement was a certainty. One of the partners in petitioner's brokerage house stated,

"At no time did Mr. Fleischman and myself tell of—tell any of our salesmen that the deal was closed.

"We never told them it was a certainty." Hearing Examiner Gross: "You just speak for yourself." The Witness: "All right. I never made a statement at any time to any of our salesmen that the deal was closed or negotiations completed. * * *

"We had no knowledge of the actual ending of negotiations." R.T. at 445.

Against this background, we find petitioner lacked a reasonable basis for his statements. For example, one witness testified that petitioner had told her that Jayark "was going sky high as soon as the merger would go through, which would be within two weeks. * * *" (R.T. at 141) and, while being cross-examined by petitioner, stated he assured her the stock would "triple." The second witness testified petitioner assured her, after listening to a detailed explanation of the witness' financial position, that Jayark would double in price in six months.

After evaluating the record on this issue, we see no basis for reversing the Commission.

■ The Commission found that petitioner "willfully" participated in violations of § 5(a) and (c) of the Securities Act in the "offer, sale and delivery" of Jayark stock when no registration statement had been filed for the stock. Petitioner's seventh ground for urging reversal is that because the Commission admits petitioner did not sell unregistered shares of Jayark, petitioner can not be found to have violated § 5 of the Securities and Exchange Act of 1933, even though he aided in the obtaining of the unregistered shares for his employer. It is petitioner's position that since he was not a "principal" in his brokerage firm, he had no duty to investigate whether his employer was correct in believing the Jayark shares were exempt from registration.

The Commission found that petitioner "was active in obtaining the * * * shares for registrant and must have known that registrant, which was making a market in Jayark stock was acquiring the shares with a view to distribution." (C.T. at 2008.) The Commission pointed out, "Kaufman (Jayark's president) addressed his correspondence with registrant regarding those shares to Reigel and discussed the transaction with him over the telephone, and registrant's confirmation of its purchase from the Kaufmans carried Reigel's name." C.T. at 2008.

The Government's argument, which we find persuasive, is that because petitioner was involved in the acquisition of the shares to be sold, the Government can take action against petitioner for aiding another in the violation of the Securities Act of 1933.

The relevant statute at the time of petitioner's conviction was 15 U.S.C. § 78o(b). This provision was amended after petitioner's hearing, and the parts the Government alleges are a codification of existing practices are 15 U.S.C. §§ 78o(b) (5) (E) and 78o(b) (7).[6] We find that the petitioner was properly subject to Commission sanctions on this point if his conduct was "willful" within the terms of the statute and if he had reason to know or should

---

6. Section 15(b) (5) (E), 15 U.S.C. § 78o (b) (5) (E) reads, in part:

"(5) The Commission shall, after appropriate notice and opportunity for hearing, by order censure, deny registration to, suspend for a period not exceeding twelve months, or revoke the registration of, any broker or dealer if it finds that such censure, denial, suspension, or revocation is in the public interest and that such broker or dealer, whether prior or subsequent to becoming so associated—

* * * * *

(E) has willfully aided, abetted, counseled, commanded, induced, or procured the violation by any other person of the Securities Act of 1933 * * *

or of this chapter, or of any rule or regulation under any of such statutes * * *."

Section 15(b) (7), 15 U.S.C. § 78o(b) (7) reads, in part:

"The Commission may, after appropriate notice and opportunity for hearing, by order censure any person, or bar or suspend for a period not exceeding twelve months any person from being associated with a broker or dealer, if the Commission finds that such censure, barring, or suspension is in the public interest and that such person has committed or omitted any act or omission enumerated in clause * * * (E) of paragraph (5) of this subsection * * *."

have known that the securities should have been registered. We find against the petitioner on both issues. *See* Batten & Co. v. SEC, 120 U.S.App.D.C. 188, 345 F.2d 82 (1964); Barnett v. United States, 319 F.2d 340 (8th Cir. 1963).

It is well established that in certain circumstances the term "willful" has no connotation of evil intent; it means only that the act was a conscious, intentional action. Gearhart & Otis, Inc. v. SEC, 121 U.S.App.D.C. 186, 348 F.2d 798, 802–803 (D.C.Cir. 1965); Tager v. SEC, 344 F.2d 5, 8 (2d Cir. 1965). Clearly, petitioner's acts fall within this definition of "willful."

We also find, for the reasons outlined by the Commission, *supra*, that petitioner should have known that the Jayark securities should have been registered; their sale violated § 5 of the Securities Act, and petitioner can be held responsible for his part in the perpetration of this offense. The Commission was not in error on this issue.

 Petitioner's concluding argument is that although petitioner was not denied counsel, the effect of the alleged irregularities discussed, *supra*, was "multiplied" because petitioner was not represented by counsel before the hearing examiner. We decline petitioner's request for a new hearing on this ground because: 1. petitioner had an opportunity to employ counsel for the hearing, 5 U.S.C. § 555(b); 2. he makes no allegation anyone deprived him of his right; 3. and the Government is not obligated to provide him with counsel. Boruski v. SEC, 340 F.2d 991, 992 (2d Cir.), cert. denied, 381 U.S. 943, 944, 85 S.Ct. 1780, 14 L.Ed.2d 706 (1965). His contention is totally without merit.

We affirm the Commission's ruling as to petitioner Reigel.

Affirmed.