UNITED STATES ᴇᴛ ᴀʟ. *v.* COLEMAN ᴇᴛ ᴀʟ.

No. 630.   Argued March 28, 1968.—Decided April 22, 1968.

*Frank J. Barry* argued the cause for the United States et al.   On the brief were *Solicitor General Griswold, Assistant Attorney General Martz, Robert S. Rifkind, Roger P. Marquis* and *George R. Hyde.*

*Howard A. Twitty* argued the cause for respondents. With him on the brief were *George W. Nilsson, W. Howard Gray, Edward A. McCabe* and *Monta W. Shirley.*

*Winston S. Howard* and *Don H. Sherwood* filed a brief for the New Jersey Zinc Co., as *amicus curiae.*

MR. JUSTICE BLACK delivered the opinion of the Court.

In 1956 respondent Coleman applied to the Department of the Interior for a patent to certain public lands based on his entry onto and exploration of these lands and his discovery there of a variety of stone called quartzite, one of the most common of all solid materials. It was, and still is, respondent Coleman's contention that the quartzite deposits qualify as "valuable mineral deposits" under 30 U. S. C. § 22 [1] and make the land "chiefly valuable for building stone" under 30 U. S. C. § 161.[2] The Secretary of the Interior held that to qualify as "valuable mineral deposits" under 30 U. S. C. § 22 it must be shown that the mineral can be "extracted, removed and marketed at a profit"—the so-called "marketability test." Based on the largely undisputed evidence in the record, the Secretary concluded that the

---

[1] The cornerstone of federal legislation dealing with mineral lands is the Act of May 10, 1872, 17 Stat. 91, 30 U. S. C. § 22, which provides in § 1 that citizens may enter and explore the public domain and, if they find "valuable mineral deposits," may obtain title to the land on which such deposits are located by application to the Department of the Interior. The Secretary of the Interior is "charged with seeing . . . that valid claims . . . [are] recognized, invalid ones eliminated, and the rights of the public preserved." *Cameron* v. *United States,* 252 U. S. 450, 460.

[2] The 1872 Act, *supra,* was supplemented in 1892 by the passage of the Act of August 4, 1892, 27 Stat. 348, 30 U. S. C. § 161, which provides in § 1 in pertinent part: "That any person authorized to enter lands under the mining laws of the United States may enter lands that are chiefly valuable for building stone under the provisions of the law in relation to placer mineral claims . . . ."

deposits claimed by respondent Coleman did not meet that criterion. As to the alternative "chiefly valuable for building stone" claim, the Secretary held that respondent Coleman's quartzite deposits were a "common variet[y]" of stone within the meaning of 30 U. S. C. § 611,[3] and thus they could not serve as the basis for a valid mining claim under the mining laws. The Secretary denied the patent application, but respondent Coleman remained on the land, forcing the Government to bring this present action in ejectment in the District Court against respondent Coleman and his lessee, respondent McClennan. The respondents filed a counterclaim seeking to have the District Court direct the Secretary to issue a patent to them. The District Court, agreeing with the Secretary, rendered summary judgment for the Government. On appeal the Court of Appeals for the Ninth Circuit reversed, holding specifically that the test of profitable marketability was not a proper standard for determining whether a discovery of "valuable mineral deposits" under 30 U. S. C. § 22 had been made and that building stone could not be deemed a "common variet[y]" of stone under 30 U. S. C. § 611. We granted the Government's petition for certiorari because of the importance of the decision to the utilization of the public lands. 389 U. S. 970.

We cannot agree with the Court of Appeals and believe that the rulings of the Secretary of the Interior

---

[3] Section 3 of the Act of July 23, 1955, 69 Stat. 368, 30 U. S. C. § 611, provides in pertinent part as follows: "A deposit of common varieties of sand, stone, gravel, pumice, pumicite, or cinders shall not be deemed a valuable mineral deposit within the meaning of the mining laws of the United States so as to give effective validity to any mining claim hereafter located under such mining laws . . . . 'Common varieties' as used in this Act does not include deposits of such materials which are valuable because the deposit has some property giving it distinct and special value . . . ."

were proper. The Secretary's determination that the quartzite deposits did not qualify as valuable mineral deposits because the stone could not be marketed at a profit does no violence to the statute. Indeed, the marketability test is an admirable effort to identify with greater precision and objectivity the factors relevant to a determination that a mineral deposit is "valuable." It is a logical complement to the "prudent-man test" which the Secretary has been using to interpret the mining laws since 1894. Under this "prudent-man test" in order to qualify as "valuable mineral deposits," the discovered deposits must be of such a character that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine . . . ." *Castle* v. *Womble,* 19 L. D. 455, 457 (1894). This Court has approved the prudent-man formulation and interpretation on numerous occasions. See, for example, *Chrisman* v. *Miller,* 197 U. S. 313, 322; *Cameron* v. *United States,* 252 U. S. 450, 459; *Best* v. *Humboldt Placer Mining Co.,* 371 U. S. 334, 335–336. Under the mining laws Congress has made public lands available to people for the purpose of mining valuable mineral deposits and not for other purposes.[4] The obvious intent was to reward and encourage the discovery of minerals that are valuable in an economic sense. Minerals which no prudent man will extract because there is no demand for them at a price higher than the cost of extraction and transportation are hardly economically valuable. Thus, profitability is an important consideration in applying the prudent-man test, and the

---

[4] 17 Stat. 92, 30 U. S. C. § 29, provides in pertinent part as follows: "A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person . . . having claimed and located a piece of land *for such purposes* . . . may file . . . ." (Emphasis added.)

marketability test which the Secretary has used here merely recognizes this fact.

The marketability test also has the advantage of throwing light on a claimant's intention, a matter which is inextricably bound together with valuableness. For evidence that a mineral deposit is not of economic value and cannot in all likelihood be operated at a profit may well suggest that a claimant seeks the land for other purposes. Indeed, as the Government points out, the facts of this case—the thousands of dollars and hours spent building a home on 720 acres in a highly scenic national forest located two hours from Los Angeles, the lack of an economically feasible market for the stone, and the immense quantities of identical stone found in the area outside the claims—might well be thought to raise a substantial question as to respondent Coleman's real intention.

Finally, we think that the Court of Appeals' objection to the marketability test on the ground that it involves the imposition of a different and more onerous standard on claims for minerals of widespread occurrence than for rarer minerals which have generally been dealt with under the prudent-man test is unwarranted. As we have pointed out above, the prudent-man test and the marketability test are not distinct standards, but are complementary in that the latter is a refinement of the former. While it is true that the marketability test is usually the critical factor in cases involving nonmetallic minerals of widespread occurrence, this is accounted for by the perfectly natural reason that precious metals which are in small supply and for which there is a great demand, sell at a price so high as to leave little room for doubt that they can be extracted and marketed at a profit.

We believe that the Secretary of the Interior was also correct in ruling that "[i]n view of the immense quanti-

ties of identical stone found in the area outside the claims, the stone must be considered a 'common variety' " and thus must fall within the exclusionary language of § 3 of the 1955 Act, 69 Stat. 368, 30 U. S. C. § 611, which declares that "[a] deposit of common varieties of . . . stone . . . shall not be deemed a valuable mineral deposit within the meaning of the mining laws . . . ." Respondents rely on the earlier 1892 Act, 30 U. S. C. § 161, which makes the mining laws applicable to "lands that are chiefly valuable for building stone" and contend that the 1955 Act has no application to building stone, since, according to respondents, "[s]tone which is chiefly valuable as building stone is, by that very fact, not a common variety of stone." This was also the reasoning of the Court of Appeals. But this argument completely fails to take into account the reason why Congress felt compelled to pass the 1955 Act with its modification of the mining laws. The legislative history makes clear that this Act (30 U. S. C. § 611) was intended to remove common types of sand, gravel, and stone from the coverage of the mining laws, under which they served as a basis for claims to land patents, and to place the disposition of such materials under the Materials Act of 1947, 61 Stat. 681, 30 U. S. C. § 601, which provides for the sale of such materials without disposing of the land on which they are found. For example, the Chairman of the House Committee on Interior and Insular Affairs explained the 1955 Act as follows:

> "The reason we have done that is because sand, stone, gravel . . . are really *building materials,* and are not the type of material contemplated to be handled under the mining laws, and that is precisely where we have had so much abuse of the mining laws. . . ." 101 Cong. Rec. 8743. (Emphasis added.)

Similarly, the Senate Committee Report stated that the bill was intended to:

> "Provide that deposits of common varieties of sand, *building stone,* gravel, pumice, pumicite, and cinders on the public lands, where they are found in widespread abundance, shall be disposed of under the Materials Act of 1947 (61 Stat. 681), rather than under the mining law of 1872." S. Rep. No. 554, 84th Cong., 1st Sess., 2. (Emphasis added.)

Thus we read 30 U. S. C. § 611, passed in 1955, as removing from the coverage of the mining laws "common varieties" of building stone, but leaving 30 U. S. C. § 161, the 1892 Act, entirely effective as to building stone that has "some property giving it distinct and special value" (expressly excluded under § 611).

For these reasons we hold that the United States is entitled to eject respondents from the land and that respondents' counterclaim for a patent must fail. The case is reversed and remanded to the Court of Appeals for the Ninth Circuit for further proceedings to carry out this decision.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.