**Maurice DUVAL et al., Plaintiffs,**

v.

**Rogers C. B. MORTON, Secretary of the Department of the Interior of the United States of America, Defendant.**

**Civ. No. 71–684.**

United States District Court,
D. Oregon.

Aug. 23, 1972.

Norman J. Wiener, T. Leonard O'Byrne, Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Jack W. Collins, Asst. U. S. Atty., Portland, Or., for defendant.

## OPINION

SOLOMON, District Judge:

Plaintiffs filed this action to review a ruling by the Secretary of the Interior which disallowed plaintiffs' mining claims for silica sand.

Between September and December, 1959, plaintiffs located 24 mining claims covering 3,080 acres of coastal sand dunes in Coos County, Oregon. On July 18, 1961, the United States Forest Service withdrew from further mineral entry the lands on which plaintiffs' claims were located because these lands were to become part of the Oregon Dunes Recreation Area.

In 1967, the Forest Service contested the validity of plaintiffs' claims on two grounds: one, the material found on the claims was not a valuable mineral deposit on July 18, 1961 (see 30 U.S.C. § 611); and, two, that on July 18, 1961, there had been no valid discovery because there were no valuable minerals on the claims.

By Act of Congress of July 23, 1955, no deposit of "common varieties" of sand, stone, gravel, pumice, pumicite, or cinders is thereafter deemed a "valuable mineral deposit" to give validity to any mining claim (30 U.S.C. § 611) except if "the deposit has some property giving it distinct and special value."

A hearing examiner from the Bureau of Land Management, Department of the

Interior, held against plaintiffs on both grounds.

All appeals within the Department affirmed the examiner's decision, but the Interior Board of Land Appeals (the Board) affirmed on the basis of the second ground only. The Board concluded that there had been no valid discovery under either the "prudent man" test or the "marketability" test of value.

Plaintiffs' final administrative remedy was exhausted when their request for reconsideration was denied.

Milvoy Suchy, a registered mining engineer who graduated from the Colorado School of Mines in 1938, was the Secretary's only witness. Suchy had worked in commercial mining operations and later as a geologist with the Corps of Engineers. During World War II, he was a marine engineer on a test crew out of San Francisco. Since 1952, he worked continuously with the Forest Service. Suchy had visited coastal and inland deposits in Oregon, Washington, and California. He also visited sand processing plants in the Monterey, California, area. He was familiar with methods of processing raw glass sand and had studied a United States Bureau of Mines report (Report of Investigations 6484) which examined the character and potential value of glass sand deposits on the Oregon coast.

He testified about the quality of sand deposits along the Oregon and Washington coasts, including deposits on the plaintiffs' claims.

Suchy testified that glass sand from the California coast is of a higher grade than Oregon sand because the Oregon sand has a higher iron oxide content. Iron oxide in glass sand discolors the final glass product. Nevertheless, sand with a fairly high iron oxide content is suitable for making amber glass, and plaintiffs' sand could be used to make amber glass bottles without extensive processing.

Suchy also testified that neither Owens-Illinois nor Northwestern Glass, the only glass manufacturers in the Pacific Northwest, was likely to turn to plaintiffs for a source of supply because both manufacturers had reliable "captive" sources of supply, which they would be reluctant to abandon, particularly since they would have to forego a tax advantage which they enjoyed. Owens-Illinois, for example, is entitled to a depletion allowance on its own sand, which comes from Monterey. It could not claim that allowance on plaintiffs' sand. Plaintiffs were also faced with the problem of negotiating favorable rail freight rates.

In spite of these problems, Suchy concluded that Owens-Illinois was a possible market for plaintiffs' sand, but not until some time in the future, when its Monterey sand supply is expected to give out.

Plaintiff Maurice Duval testified. He also called Henry Harris and George Carter, two ceramic research engineers. All three stated that the sand from plaintiffs' claims had unique qualities because it could be used for making amber glass without any processing other than drying.

This testimony merely confirmed the testimony of Mr. Suchy on the unique character of this sand deposit and was the basis for the action of the Interior Board of Land Appeals in rejecting that portion of the examiner's decision which found that this sand did not have properties which gave it distinct and special value as required by 30 U.S.C. § 611.

The issue here is limited to determining whether on July 18, 1961, plaintiffs had made a valid discovery of valuable minerals.

The Secretary held that there was no such discovery.

Plaintiffs seek to set aside this holding on the ground that it was based upon incompetent evidence and that the

Secretary's decision disregarded plaintiffs' evidence and was contrary to the admissible evidence. Plaintiffs also contend that the Secretary misapplied the law of valid discovery and abused his discretion in denying their request for reconsideration.

There is no merit in any of these contentions.

■ Although Suchy had no prior experience with glass sand, he was familiar with sand processing techniques and with the qualities of the sand deposits in the Pacific Coast states. Suchy was an experienced and competent mining engineer, who had examined the area and studied the literature. In my view he was qualified to and did intelligently evaluate the economic aspects of the proposed mining operation.

His conclusion that there was no market for this sand in 1961 was amply supported not only by the facts which he developed, but also by the testimony of Duval and plaintiffs' other witnesses. Harris testified that non-metallic minerals are usually sold through closed contracts to customers rather than on the open market. Duval admitted that he had done nothing other than make test samples of the deposit until after July 18, 1961. He did not apply for or obtain a rail freight rate until 1966 because, as he candidly admitted, "We were not in a position actually to approach the market." Neither did he, until long after 1961, attempt to interest Northwestern Glass and Owens-Illinois in his sand. In 1966, his plan to send 150 tons of sand to Northwestern Glass for a "test melt" fell through because Northwestern told Duval that it could not then afford to interrupt its near-capacity production schedule, and no such test was made until 1967.

■ The Board did not misapply the law when it decided that valuable minerals had not been discovered by July 18, 1961. There are two tests of value, the "prudent man" test and the "marketability" test. Mineral deposits are not deemed valuable unless "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." United States v. Coleman, 390 U.S. 599, 602, 88 S.Ct. 1327, 1330, 20 L. Ed.2d 170 (1968). It must be shown that mineral deposits can be "extracted, removed and marketed at a profit" to meet the marketability test. This test complements and refines the prudent man test. United States. v. Coleman, *supra*, at 600–603, 88 S.Ct. 1327, 1329.

■ Although successful exploitation of a mining claim is not necessary to satisfy either test [Barrows v. Hickel, 447 F.2d 80 (9th Cir. 1971)], there must be *some* evidence that minerals from a claim *can* be marketed at a profit. Verrue v. United States, 457 F.2d 1202 (9th Cir.). Plaintiffs showed that the quality of their sand was known prior to July 18, 1961, and that the sand was probably fit for industrial use, but they could not show that, prior to the withdrawal date, the sand could be extracted and shipped to glass manufacturers at a profit.

■ A mineral location based upon speculation that there may be a market for the discovered material in the future will not establish discovery. Barrows v. Hickel, *supra*. The claimed materials must be valuable as of the time of their discovery—in this case not later than July 18, 1961. Plaintiffs were not able to tell potential buyers what it would cost to process and ship the sand to them. In addition, their ability to break into a closed market, supplied by captive sources of raw material, was doubtful. Plaintiffs failed to show that there was a market for the materials that was sufficiently profitable to attract the efforts of a person of ordinary prudence or that

there was a reasonable prospect of success in the development of the mine.

I find that the Board considered all of the evidence and correctly concluded that it did not show a valid discovery as of July 18, 1961.

Plaintiffs' request for reconsideration or, in the alternative, supplemental hearings on marketability, was properly denied. Plaintiffs were not represented by an attorney at the hearing before the examiner. But administrative hearings are often conducted without attorneys. Plaintiffs have shown no prejudice. Plaintiff Maurice Duval was a knowledgeable claimant who competently prepared and presented his case.

The petition for reconsideration was presented with the assistance of counsel; this presentation included an affidavit dated June 25, 1971, from E. Marr, a vice president of Owens-Illinois. Marr stated that his company would be interested in an option on plaintiffs' sand for testing purposes, and if the sand proved suitable his company would explore the possibility of a long-term agreement. In other words, more than 10 years after the critical date, the best ex parte statement that the plaintiffs were able to secure from one of the two possible purchasers would not support a finding that a valid discovery had been made by July 18, 1961. In the same affidavit Marr stated that in his opinion the sand would have been marketable before July 18, 1961, if it was of sufficient quality and if it could have been delivered economically. This conditional and qualified opinion was equally deficient.

There was no abuse in denying plaintiffs' request for a reconsideration or an opportunity to introduce additional evidence.

The Secretary of the Interior is entitled to a judgment dismissing plaintiffs' action.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).