588 F.2d 671
 Adrian EDWARDS, Trustee for Ross Stegman, a real party in
interest, Plaintiff-Appellee,
v.
Thomas S. KLEPPE, Secretary of the Department of the
Interior of the UnitedStates of America,
Defendant-Appellant.
 No. 77-3315.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 26, 1978.
Rehearing Denied Dec. 11, 1978.
 
 John J. Zimmerman, Atty. for Land and Natural Resources Div. (argued), Dept. of Justice, Washington, D. C., for defendant-appellant.
 Stan A. Lehman (argued), Prescott, Ariz., for plaintiff-appellee.
 On Appeal from the United States District Court for the District of Arizona.
 Before MERRILL and CHOY, Circuit Judges, and TANNER,* District Judge.
 MERRILL, Circuit Judge:
 
 
 1
 This case, another in the series coming before this court dealing with mining claims on common varieties of minerals, presents the question whether a valuable mineral discovery was made prior to July 23, 1955, the date when common varieties ceased to qualify as valuable mineral deposits under the mining laws of the United States. 30 U.S.C. § 611.[1]
 
 
 2
 Appellee is trustee of a trust established by Ross Stegman. In 1949 Stegman entered on the property in dispute, located in Yavapai County, Arizona, and from that date operated it as a rock quarry and gravel pit. In 1956 he first posted location notices for a mining claim. Erroneously, he claimed a lode. Ten years later, after his claim was contested by the government, he formally "abandon(ed) the Rock Quarry lode mining claim location notice and stipulat(ed) that he gained no mineral rights thereunder." In 1966, Stegman and others filed a placer claim on the ground. Thereafter, an amended notice of location was filed by appellee as trustee and an application for a patent was filed. On April 29, 1969, the Department of the Interior issued a complaint seeking cancellation of the claim and rejection of the patent application. Hearing was had before a hearing examiner. On August 16, 1971, he handed down his decision holding the claim invalid among other reasons for want of a valuable discovery under the prudent-man test and the marketability test as defined in United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). "Under (the) 'prudent-man test' in order to qualify as 'valuable mineral deposit', the discovered deposits must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine. * * * ' Castle v. Womble, 19 L.D. 455, 457 (1894)." 390 U.S. at 602, 88 S.Ct. at 1330. To qualify as "valuable mineral deposits" under the "marketability test" it must be shown that the minerals can be " 'extracted, removed and marketed at a profit.' " 390 U.S. at 600, 88 S.Ct. at 1329.
 
 
 3
 The decision of the hearing examiner was upheld by the Interior Board of Land Appeals and appellee brought this suit in the district court to review that decision.[2] The district court, on motion for summary judgment, ruled that there was not substantial evidence to support the Board's decision and entered judgment for appellee. This appeal by the government followed.
 
 
 4
 It is our judgment that the administrative record does provide substantial evidence to support the decision that there was no discovery of a valuable mineral deposit prior to July 23, 1955, and of the findings on which that decision was based. Accordingly we reverse.
 
 
 5
 The Board quotes the hearing examiner as follows:
 
 
 6
 "Mr. Ross Stegman testified that he had quarried and sold building stone and flagstone from his claim and has sold sand and gravel from his claim from 1949 until the present time. His testimony on sales was based solely on memory and rough estimates for he had few receipts. His testimony shows:
 
 
 7
 Date Rock Sand and Gravel
------- ---- ---------------
1949 $100 $ 8.00
1950 140 9.40
1951 175 6.40
1952 250 16.00
1953 100 46.40
1954 100 3.80
1955 100 9.40
 ---- ------
 Total $965 $99.40
 
 
 8
 Thus, from 1949 through 1955 and prior to the enactment of Public Law 167 (or July 23, 1955), he received a total of $1,064.40 for sales of sand and gravel and rock from the claim."
 
 
 9
 9 IBLA 201 (1973).
 
 
 10
 The Board quotes Stegman's testimony before the hearing examiner as follows:"Q. Now, from '49 to '55, did you operate each year?
 
 
 11
 A. Yes, sir.
 
 
 12
 Q. Did you sell stone each year?
 
 
 13
 A. Sold some, I sold rock, I would say. I don't think I missed a year selling a few rocks, maybe a load, say a load, what we call a load, pickup load, to somebody who comes along, most people I never did see before, and they come after rocks."
 
 
 14
 9 IBLA 201-02 (1973).
 
 
 15
 Other witnesses for appellee added but little.[3] The Board concluded:
 
 
 16
 "We agree that this record of sales is inadequate to indicate that a 'valuable mineral deposit' within the context of 30 U.S.C. 22 (1970) has been discovered. The receipts each year were barely sufficient to equal the expenditure required for assessment work, with a few dollars more for the four locators. The figures represent gross receipts. No costs were given, and the net profit, if any, was not stated."
 
 
 17
 9 IBLA 202 (1973).
 
 
 18
 The only market suggested was that provided by the small town of Sedona, seven miles from the claim.[4] The Board stated:
 
 
 19
 "While other testimony indicated that the population of Sedona has increased somewhat in recent years, there is nothing that suggests that prior to July 23, 1955, the town, as the 'principal market' for the material from this claim could conceivably generate sufficient demand for such materials to justify a prudent man in the reasonable anticipation that a valuable mine could be developed. Castle v. Womble, 19 L.D. 455 (1894). Minerals which no prudent man will extract because there is no demand for them at a price higher than the cost of extraction and transportation are hardly economically valuable. United States v. Coleman, 390 U.S. 599 (88 S.Ct. 1327, 20 L.Ed.2d 170) (1968)."
 
 
 20
 9 IBLA 202 (1973).
 
 
 21
 We agree. To the same effect is Melluzzo v. Morton, supra n. 1.
 
 
 22
 The district court in rendering summary judgment for appellee cited this court's decision in Verrue v. United States, supra n. 1, in which we held that lack of successful exploitation of a mining claim is not substantial evidence supporting a finding of a failure to satisfy the prudent-man test when other positive evidence of marketability exists. 457 F.2d at 1204. Judgment of the court below was rendered prior to our decisions in Clear Gravel Enterprises and Melluzzo, supra n. 1. Melluzzo casts light on Verrue, making it clear that while successful exploitation of the claim itself is not necessary, proof of value and marketability is. 534 F.2d at 864-65. If there have been no sales from the claim sufficient to establish that operation of the claim would prove profitably attractive to a prudent man, then value and marketability must be proved in some other way. See Barrows v. Hickel, supra n. 1, at 82-83. In Verrue they were proved by showing that comparable material was being profitably sold by others prior to July, 1955, and that the market had been one that was available to the claimant. 457 F.2d at 1204. Here there is no evidence of value or of marketability of Stegman's rock, sand or gravel prior to July, 1955, other than the testimony as to the extent to which he had exploited his claim. We cannot quarrel with the Board's appraisal of that showing and conclude that the record supports its ruling.
 
 
 23
 Summary judgment in favor of appellee is reversed.
 
 
 
 *
 Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 Other in the series included Barrows v. Hickel, 447 F.2d 80 (9th Cir. 1971); Verrue v. United States, 457 F.2d 1202 (9th Cir. 1972); Clear Gravel Enterprises v. Keil, 505 F.2d 180 (9th Cir. 1974), Cert. denied, 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 87 (1975); Melluzzo v. Morton, 534 F.2d 860 (9th Cir. 1976)
 
 
 [2]
 The Board affirmed the finding of the hearing examiner that the material from the claim was a common variety and that no valuable discovery was made prior to 1955. The Board did not reach the ruling of the hearing examiner that in locating a lode claim Stegman had elected not to claim under 30 U.S.C. § 38 (granting patent rights based on adverse possession of property on which a valuable mineral discovery had been made), and had waived any rights he otherwise might have under that section
 
 
 [3]
 The greater and more impressive part of their testimony dealt with removal of material after July, 1955, and with incidents occurring in the sixties, after the government had initiated its contest and the Forest Service prohibited removal of material from the claim
 
 
 [4]
 One witness who was in business in Sedona testified that Stegman's sales were to "just people around Sedona." They would come in for rocks needed around their homes for retaining walls or patios. Aside from two state highway employees, the only witness who might be regarded as making business purchases could not credibly testify to any purchases prior to July, 1955