**GLADYS CITY COMPANY, et al.**

v.

**AMOCO PRODUCTION COMPANY.**

**Civ. A. No. B–80–235–CA.**

United States District Court,
E. D. Texas,
Beaumont Division.

Dec. 17, 1981.

Chilton O'Brien, O'Brien & Richards, Beaumont, Tex., for plaintiffs.

John W. Stayton, Jr. and Robert C. McGinnis, McGinnis, Lochridge & Kilgore, Austin, Tex., Dean J. Capp and Michael Lattimore, Houston, Tex., for defendant.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

The plaintiffs, Gladys City Company and 34 individuals who own Gladys City, seek a declaratory judgment pursuant to 28 U.S.C. 2201, 2202 that they own the rights to produce salt under part of the Spindletop Salt

---

1. This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law re- quired by Rule 52, F.R.Civ.P.

Dome in Jefferson County, Texas, and that Amoco Production Company acquired no rights to the salt under a 1925 lease, or that Amoco forfeited those rights under the lease.

The plaintiffs have invoked diversity jurisdiction. Amoco is Delaware Corporation with its principal place of business in Illinois, and the plaintiffs are all residents of states other than Illinois or Delaware. Venue is proper by consent.

## I. THE FACTS

In 1925, Gladys City Oil, Gas & Manufacturing Company entered into a lease contract and agreement with the Yount-Lee Oil Company for certain mineral rights on a tract of land comprising part of the Spindletop Salt Dome. The plaintiff Gladys City Company (Gladys City) is the successor in interest to Gladys City Oil, Gas & Manufacturing Company and Amoco Production Company (Amoco) is the successor in interest to Yount-Lee Oil Company. The lease provides in pertinent part that the

Lessor hereby GRANTS, LEASES and LETS unto lessee, its successors and assigns, the hereinafter described premises for the sole and only purpose of allowing lessee to exploit, operate, and mine for oil, gas, and other valuable minerals thereon . . . .

Plaintiffs' Exhibit 2, at 1 (Paragraph one). Paragraph Six of the lease contains a provision that requires the lessee to drill wells in a

good faith attempt to develop deep oil, (as well as any other oil, gas or minerals discovered).

Provided, regarding sulphur and valuable minerals other than oil and gas, it is contracted that lessee will promptly and truly report to lessor in writing the date and extent of any discovery thereof and shall thereafter have ninety (90) days

from date of discovery within which to determine whether lessee desires to mine and develop the same and within which to so notify lessor in writing of his election, and should lessee determine not to develop and mine the same, and so notify lessor, it shall be relieved from such obligation and thereby forfeit and surrender all rights with reference thereto, and lessor, its successors and assigns, may thereupon enter upon said premises and proceed with the mining, drilling, extraction and development thereof, enjoying all rights upon said premises requisite thereto.

It is undisputed that the defendant "encountered" salt in the process of drilling for oil. It is also undisputed that the defendant never reported the extent and discovery of any salt, nor did it ever make any formal election to either produce the salt, or forfeit its rights to it.

The parties are in agreement that there was no commercial market for salt in the Spindletop Dome in 1925, and it could not be profitably marketed. Plaintiffs and defendant are also in agreement that, if paragraph Six applies, "discovery" of a "valuable mineral" means that a mineral covered by the grant in the lease is found in sufficient quantity, with a sufficient market, that it can be produced at a profit.

The evidence at trial established that there was at all times a large quantity of salt in the dome. There was some dispute as to whether the salt could be mined from the Salt Dome. Defendant's expert was of the opinion that it could not be safely mined using abandoned well bore 115, as suggested in some of the proposals, because that well was too close to the edge of the dome. The evidence was uncontradicted, however, that salt could be mined safely a short distance from present well 115.[2]

2. The issue of whether there was a market for salt was hotly disputed. In 1955, Brine Service Company offered to produce brine from well 115. See Defendant's Exhibit 9. The two proposals made in the offer were "based on the assumption that [defendant] has a conventional Mineral Lease from Gladys City which permits the mining of salt in brine form . . ." The proposals were (1) Texas Brine would operate well No. 115 and pay the defendant 50 cents per ton, or (2) defendant would operate the well and receive $2.00 per ton. The defendant estimated that, excluding any payments to

## II. ISSUES

The first issue presented by the facts is whether salt is a "valuable mineral" under the 1925 lease. The second issue is whether paragraph six of the lease applies to salt, and if it does, whether salt was ever "discovered" at any time after 1925. The third issue is, assuming paragraph six applies and salt was discovered, whether the defendant forfeited its rights to the salt by failing to elect whether to produce it or not. The fourth issue is whether the claim is barred by limitations.

## III. DISCUSSION

### A. Is Salt a "Valuable Mineral" Under the 1925 Lease

■ In construing this lease, the Court must give effect to the ordinary meaning of the words used and the Court must ascertain the intent of the parties. *See Mound Company v. Texas Company*, 298 F.2d 905, 908 (5th Cir. 1962), *cert. denied*, 371 U.S. 817, 83 S.Ct. 29, 9 L.Ed.2d 57 (1962); *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957). The plaintiff has suggested that a "valuable mineral" is one "of such character that a person of ordinary prudence would be justified in further expenditure of his labor and means [to exploit it]." *See United States v. Coleman*, 390 U.S. 599, 602, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968) (quoting *Castle v. Womble*, 19 L.D. 455, 457 (1894)). This definition of valuable is consistent with its ordinary meaning. It is undisputed that under this "prudent man" formulation, *see United States v. Coleman*, 390 U.S. 599, 602, 88

S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968), salt was not a valuable mineral when the lease was executed.

The defendant argues that the term "valuable minerals" should be read "other minerals" because these terms were used interchangeably in the lease. The defendant further argues that a valuable mineral is one which is valuable at the time the lease was executed or which later becomes valuable.

■ The word "valuable" modifies minerals in paragraph one, which is the grant of mineral rights to the defendant. The Court does not believe that the parties intended that word to have no significance and effect. The mere fact that the lease refers to "other minerals" in later paragraphs does not show that the parties intended the word "valuable" in the grant to be superfluous. The later references to "other minerals" is either a shorthand to refer to the valuable minerals conveyed in paragraph one, or refers to all minerals for the particular purpose of the clause in which the phrase is used.

The defendant also argues that, assuming salt was not valuable in 1925, it was nevertheless embraced by the lease because the term valuable minerals includes those that later become valuable. First, this argument is inconsistent with the defendant's assertion that salt never became valuable at Spindletop and cannot be profitably mined. To say that it is a valuable mineral because it might at some unknown time in the future become valuable would mean that all substances capable of being mined are valu-

Gladys City, proposal No. 1 would net defendant $50.00 a day. *See* Plaintiff's Exhibit # 4.

Brine Service negotiated directly with Gladys City, offering plaintiff 25 cents a ton for dry salt, and apparently, the defendants were seeking a minimum royalty of 50 cents for the use of well No. 115. The Court finds that the failure of these negotiations to lead to the development of the salt was due, in part, to the uncertainty over who owned the salt, and not because there was no market for it.

In 1956, Texas Brine solicited Gladys City to enter into a long term contract with it to produce salt for Jefferson Chemical Company. According to Defendant's Exhibit 14, the con-

tract would provide a royalty of 12.5 cents per ton with a minimum rental of $500.00 per month. Texas Brine predicted that they would need about 50,000 to 60,000 tons per month for three years, and that the capacity of the salt reserve was about 500,000 to 600,000 tons per month.

One of the pitfalls cited by Gladys City in Defendant's Exhibit 14 was the dispute with defendant over ownership of the salt. The fact that no agreement was reached does not imply that there was no market. The Court finds that there was a market for salt in 1955, and that it could have been profitably produced by the defendant.

able minerals. This is clearly not the case. The cases cited by the defendant simply do not support this assertion. In *Luse v. Boatman*, 217 S.W. 1096 (Tex.Civ.App.—Fort Worth 1919, writ ref'd), the court held that an 1894 reservation of "all the coal and mineral" included oil and gas, despite the fact that there was no development of oil and gas in Texas in 1894. In *Rio Bravo Oil Co. v. McEntire*, 59 S.W.2d 962 (Tex.Civ. App.—Austin 1933) *rev'd on other grds* 128 Tex. 124, 95 S.W.2d 381 (1936), the court held that an 1887 reservation of "coal, mineral, stone or other valuable deposits" included oil and gas. The *Rio Bravo* court relied on *Luse* and a number of other opinions and stated that the well settled rule in Texas was that oil and gas are included as "minerals" as a matter of law. The *Luse* case does not aid the defendant because that grant was of all minerals. The *Rio Bravo* case did not hold that oil and gas were valuable, rather, it held that they were minerals as a matter of law. It was not contended in that case that oil and gas were not valuable, only that they were not produced in Texas at the time, for whatever reasons.

In *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800 (1940), the Texas Supreme Court held that an 1891 reservation of "all Minerells Paint Rock &c (sic)" included oil and gas as a matter of law. That lease, as in *Luse*, did not involve a grant or reservation of "valuable minerals."

Amoco finally argues that salt is a valuable mineral under the *Reed v. Wylie-Acker v. Guinn* surface destruction test. *See Reed v. Wylie*, 597 S.W.2d 743 (Tex. 1980) (*Reed II*); *Reed v. Wylie*, 554 S.W.2d 169 (Tex. 1977) (*Reed I*); *Acker v. Guinn*, 464 S.W.2d 348 (Tex. 1971). Under these cases, a grant

or reservation of "other minerals" includes all *valuable* substances which can be mined without destroying or depleting the surface.[3] The defendant argues that since "valuable" is inserted by implication when construing the phrase "other minerals," the reverse should obtain. Logic and grammar refute this point. "Other minerals" include minerals which are valuable and those which are not. The *Reed* and *Acker* cases may be limited to "valuable substances," but that does not mean that "other minerals" is synonymous with valuable minerals.[4]

█ The Court finds that salt was not included in the grant of other valuable minerals in the 1925 lease because in 1925, reasonably prudent men would not have been justified in expenditure of time and resources to exploit the salt because there was no market for it.

### B. The Effect of Paragraph Six

Assuming that salt was not conveyed by paragraph one of the lease, the next question is whether paragraph six gives the defendant any right to the salt. The first interpretation is that paragraph six has no effect in this case, because it only grants rights with respect to the discovery of valuable minerals as determined by paragraph one. A second interpretation of paragraph six is that it applies where a mineral not conveyed by paragraph one is discovered, and is valuable at the time of discovery or where a mineral previously encountered becomes valuable. Under this theory, if salt was "discovered," then the defendant could produce it if it notified plaintiffs in writing within 90 days of its election.

██ The Court is of the opinion that the most reasonable interpretation is that defendant obtains no additional rights to

---

3. Of course, there is no dispute that salt can be mined by injecting fresh water into a cavity and extracting brine without depleting the surface. It is, under the *Reed-Acker* test a mineral, but this is not dispositive of whether the 1925 lease of "valuable minerals" was intended to embrace salt.

4. Amoco also claims that plaintiffs' definition of valuable minerals is belied by the inclusion

of sulphur in the lease, because plaintiffs admit that sulphur, like salt, was not valuable in 1925. The Court notes that there are inconsistencies in the lease regarding sulphur. One construction of the lease that resolves the conflict is that although sulphur is not granted in paragraph one as a valuable mineral, it is specifically and conditionally granted in paragraph six.

the salt by paragraph six. The rights and obligations concerning "other valuable minerals" in paragraph six refer to the "valuable minerals" granted in paragraph one.[5]

## IV. LIMITATIONS

The defendant contends that the plaintiffs' claims are barred by limitations in that they were aware of all the facts and circumstances that supported their claim as early as 1955. Defendants do not cite which statute of limitations would apply, but infer that a delay of over 25 years would bar the action.

 The Court is of the opinion that the suit is one to remove a cloud on title, and that the cause of action is not barred as long as the cloud exists. *See*, e.g., *Watson v. Rochmill*, 137 Tex. 565, 155 S.W. 783 (1941); *Texas Co. v. Davis*, 113 Tex. 321, 254 S.W. 304 (1923).

## V. CONCLUSION

Gladys City is the owner of the salt now found by the Court to be "valuable mineral;" the 1925 Yount-Lee lease did not include the rights to the salt under said property. The plaintiff Gladys City is entitled to the right to exploit, to sell, and make such use of the salt on said property described in the lease as it desires, the defendant Amoco Production Company having acquired no rights to the salt under the terms of the oil and gas lease of 1925; and further, the defendant Amoco Production

---

5. Even if salt were granted to Amoco by the lease, either by reason of it being a valuable mineral in 1925 or it being a "discovered valuable mineral" at some later date, Amoco has forfeited its rights to the salt by not complying with the express obligations in the lease. Paragraph six requires the lessee to notify the lessor "in writing of the date and extent of any discovery" and have ninety (90) days from the date of discovery ..." to elect to exploit the minerals or forfeit any rights. It is undisputed that Amoco has done neither.

Amoco's contention is that salt has never become valuable and therefore paragraph six is not activated, and further, that there can be no forfeiture because the defendant never notified the plaintiffs of its election.

Amoco's failure to make an election cannot be excused by its assertion that there was and is no market for the salt. The Court has found that there was a market for the salt after 1955. *See* note 2 *supra*. Amoco's second argument is ludicrous. The contract requires the lessee to elect between producing the salt or forfeiting rights to it. Since Amoco failed to make any election upon its discovery of the salt, it lost its right to elect. *See Hemming v. Zimmerschitte*, 4 Tex. 159 (1894).

It can also be said that Amoco has made an election not to mine the salt. It has not formally notified the plaintiffs, but it has nonetheless explicitly stated that it feels it has no obligations with respect to salt under the lease. Amoco's contumacious refusal even up to the date of trial to either develop the salt or relinquish its rights cannot be interpreted in any other manner.

The Court disagrees with Amoco's assertion that the forfeiture provision was for the benefit of the defendants and not the plaintiffs. The requirement of notice was intended to aid the plaintiffs, in that they would be aware that defendant would not have any obligation to develop the salt. The requirement of notification was not put in the lease to enable defendant to avoid its obligation of development and at the same time avoid the consequence of forfeiture.

Amoco argues that the rights to the salt were not forfeited because " '[a]n oil and gas lease will not be forfeited for a breach of a condition that is not designated in the lease as a ground for forfeiture.' " Defendant's Trial Brief at 7 (quoting 42 Tex.Jur.2d *Oil & Gas* § 271 (1963)). If such rule does exist, it would not apply in this case because there is an express provision in paragraph six that an election not to produce results in forfeiture. Although the defendant asserts that it has not so elected, its failure to do so in light of the plaintiffs' demands and this litigation can only be construed as a decision not to produce salt. The case of *W. T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 195 S.W.2d 27 (1927), is not on point because it involved an implied forfeiture, as opposed to an express forfeiture in the present lease.

Amoco also states that the Court cannot make a determination that Defendant's rights to the salt have been forfeited because Gladys City did not give Amoco notice and an opportunity to cure. The cases cited by Amoco in support of this proposition, *Hoover v. General Crude Oil Co.*, 147 Tex. 89, 212 S.W.2d 140 (1948) and *Curry v. Texas Co.*, 18 S.W.2d 256 (Tex.Civ.App.—Eastland 1929, writ ref'd) do not convince the Court that this is the law, but in any event, Gladys City gave unequivocal notice to the defendant that Gladys City claimed ownership of the salt and that defendant's rights to the salt had been considered forfeited. It appears that the plaintiff has been patient in trying to resolve the dispute and that Amoco has had ample opportunity to cure, which it refuses to do.

Company forfeited any such rights as it contends it received under said lease when salt was discovered to be a "valuable mineral."