**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1250**

GEOFFREY J. GARCIA; CHARLOTTE M. GARCIA,

             Plaintiffs - Appellants,

        v.

UNITED STATES OF AMERICA; INTERIOR BOARD OF LAND APPEALS,

             Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:06-cv-00915-CMH-TCB)

Argued:  October 28, 2009           Decided:  January 20, 2010

Before MOTZ and GREGORY, Circuit Judges, and Benson E. LEGG,
United States District Judge for the District of Maryland,
sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Richard Merritt Stephens, GROEN, STEPHENS & KLINGE, LLP,
Bellevue, Washington, for Appellants.  Anna Katselas, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.
**ON BRIEF:** Ronald J. Tenpas, Assistant Attorney General, John L.
Smeltzer, John S. Most, UNITED STATES DEPARTMENT OF JUSTICE,
Environment & Natural Resources Division, Washington, D.C.;
Michael A. Schoessler, Attorney-Adviser, UNITED STATES
DEPARTMENT OF THE INTERIOR, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Today marks a milestone for the Fourth Circuit as we address, for the first time in recorded history, an appeal involving a gold mining claim under the Mining Act of 1872.[1] Geoffrey and Charlotte Garcia ("the Garcias") appeal from an order of the United States District Court for the Eastern District of Virginia granting summary judgment to the United States and Interior Board of Land Appeals ("the Board"). The district court held that the Board's decision denying the viability of the Garcias' claim on a plot of land in Oregon did not violate the Administrative Procedure Act ("the APA"). For the reasons that follow, we vacate and remand.

I.

The Mining Law of 1872 encourages mineral exploitation by allowing prospectors who patent mining claims to take fee title to the land on which the claim rests. To obtain a patent from the Department of the Interior, the applicant must prove that he or she has discovered a "valuable mineral deposit," which means

---

[1] When we inquired about venue at oral argument, the Garcias informed us that they sued the Department of the Interior in its home district to avoid unfavorable precedent in the Ninth Circuit. The Government, for reasons unknown, decided not to challenge the Garcias' choice of venue.

a deposit that a prudent person would expend labor and means to develop.

The Garcias are gold miners who applied in 1985 to patent the Last Chance Association Placer Mining Claim on a 24.23 acre plot in Oregon, and thus take title of the land.[2] In 1990 the Bureau of Land Management ("BLM") issued the Garcias a First Half Final Certificate ("FHFC") -- an official acknowledgement that the necessary paperwork is on file that authorized the Garcias to go forth and prove that they had discovered a valuable mineral deposit.

During the process, a BLM mineral examiner evaluated the Garcias' claim and determined, based on soil samples and cost estimates, that the Garcias had not discovered a valuable mineral deposit. Based on the examiner's report, the BLM filed a contest complaint in the Department of Interior's Office of Hearings and Appeals disputing the Garcias' claim.

This triggered a hearing before an Administrative Law Judge ("ALJ") in 1997, in which the Garcias appeared pro se. The ALJ heard testimony, saw evidence, and considered post-hearing briefs about the economics of the Last Chance mine. The ALJ made findings regarding both the potential revenues from the

---

[2] "Last Chance" is the name of the mine. "Placer mining" refers to a mining process that entails sifting through gravel to find valuable minerals.

mine, including the likely price of gold (estimated at $400/tr-oz), and the cost of mining the claim. Based on these findings, the ALJ determined that the Garcias stood to profit from the mine, and so granted their application.

BLM appealed the ALJ's order to the Board, which issued a twenty-four page opinion reversing the ALJ. United States v. Garcia, 161 IBLA 235 (2004). The Board agreed with all of the ALJ's findings except with regard to the wash plant rate. Id. at 241, 253-54. The wash plant is a facility that uses water to extract gold from gold-bearing gravel. The plant then expels the water and non-gold sediment. Rather than discharge effluent into public waterways, the Garcias intended to recycle the water through "settling ponds." Once water from the wash plant enters a settling pond, the solids sink to the bottom, leaving the water available to wash more gravel.

The ALJ had found that the Garcias' existing wash plant facility could process minerals at a rate of 100 loose cubic yards per hour ("lcy/hr") -- which would use 90,000 gallons per hour of water. The Board found that this calculation failed to take into account the small size of the settling ponds. Including that variable, the Board determined that the plant could operate at a maximum rate of 25 lcy/hr -- using 22,500 gallons per hour. 161 IBLA at 254-55.

The Board then evaluated the operating costs of the mining operation, including the wash plant, and determined that at the lower rate of operation, the mine would generate a loss. Id. at 258. Specifically, the Board considered the costs of mining Area 1, the most easily mined (and hence the most likely to be profitable) area of the claim, and concluded that mining Area 1 would return a $8700 loss. Id. Because a prudent person would not mine at a loss, the Board held that the Garcias had failed to prove that they had discovered a valuable mineral deposit, and so voided their claim. Id.

The Garcias filed a petition for reconsideration with the Board. The Board reconsiders its rulings only in "extraordinary circumstances." In their petition, the Garcias raised, for the first time, several objections to the ALJ's and the Board's cost estimates. The Board addressed each of the Garcias' arguments and then denied their petition, concluding that "their reasons stated in support of reconsideration are essentially an attempt to relitigate issues considered and decided by [the ALJ] and this Board. The reasons do not establish extraordinary circumstances to support reconsideration of our decision."

The Garcias then brought this action under the APA in the United States District Court for the Eastern District of Virginia. On cross-motions for summary judgment, the district

court held in the Board's favor.   The Garcias timely noted this appeal.

## II.

The APA permits courts to review only those actions "made reviewable by statute and final agency action for which there is no other adequate remedy in a court."   5 U.S.C. § 704 (2006). In this case, the final agency action is the Board's decision. 43 C.F.R. §§ 4.21(d), 4.403 (2009).   Reviewing courts consider the "whole record" and set aside agency actions that are, inter alia, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "without observance of procedure required by law;" or "unsupported by substantial evidence."   5. U.S.C. § 706 (2006).

"In determining whether agency action was arbitrary or capricious, the court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made."   Ohio Valley Envtl. Coalition v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009).   The standard of review is "highly deferential, with a presumption in favor of finding the agency action valid."   Id.   We will uphold the agency action if "the agency has examined the relevant data" and provided an explanation of its decision that includes "a 'rational connection between the facts found and the choice

made.'" Id. (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co., 463 U.S. 29, 43 (1983)).

"Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. In substantial evidence review, a reviewing court "should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [agency]." Id. (internal marks omitted).

The Garcias raise several issues. For ease of exposition, we address the issues in a slightly different order than the Garcias presented them in their brief.

III.

The Garcias maintain that the Board's procedures violate § 557 of the APA. These arguments fail.

The Garcias contend that the statute compels the ALJ to give the Board a recommended decision and to allow the parties an opportunity to comment on that decision. But a careful reading of the APA reveals that it only requires ALJs to "recommend a decision" when the agency requires "the entire

7

record to be certified to it for decision." 5 U.S.C. § 557(b) (2006). The Board, however, requires no such thing. Instead, it permits ALJs to make the initial decision in the case themselves.

The Garcias also argue that the APA requires the ALJ and the Board to allow them to comment on any proposed decision before the decision becomes final, and the ALJ and the Board did not allow them to do this. See 5 U.S.C. § 557(c) (2006). In fact, the ALJ and the Board provided the Garcias with exactly the procedure mandated by law. First, the ALJ gave the parties an opportunity to submit post-hearing briefs, including proposed findings, to the ALJ. 43 C.F.R. § 4.452-8(a) (2009) ("At the conclusion of the testimony the parties . . . shall be given a reasonable time by the administrative law judge . . . to submit . . . proposed findings of fact and conclusions of law and reasons in support thereof."). Then, after the BLM appealed the ALJ's decision to the Board, the Garcias had ample opportunity to comment on the entire record, including the ALJ's decision.[3]

We thus hold that the Board's procedures complied with the requirements of § 557 of the APA.

---

[3] The Garcias also imply that the Board was required to hold additional hearings on appeal. This position finds no support in the APA or the related caselaw.

IV.

The Garcias argue that the Board arbitrarily reversed the ALJ's finding regarding the wash plant rate. The Garcias contend that the ALJ was in a better position to hear the evidence, that substantial evidence supported his decision, and that the Board reversed the ALJ without reason.

This argument misconceives the relationship between the ALJ, the Board, and this court. Although, as a practical matter, the Board may have a disinclination to reverse an ALJ, the Board reviews an ALJ's decision de novo, with no obligation to defer to an ALJ's findings. 5 U.S.C. § 556(b) (2006), United States v. Dunbar Stone Co., 56 IBLA 61, 67-68 (1981). Once the Board completes its review, it speaks for the agency. 43 C.F.R. §§ 4.21(d), 4.403 (2009). Our deferential standard then applies to the Board's decision, and not to the ALJ's. Thus, the proper question is not whether the Board arbitrarily reversed the ALJ, or whether substantial evidence supported the ALJ's decision, but rather whether the Board's ultimate conclusions on the merits are arbitrary and capricious, or unsupported by substantial evidence.

Applying that standard, we find no fault with the Board's conclusions regarding the wash plant rate. First, the Garcias themselves used a processing rate of 25 lcy/hr in their patent application. Second, three separate witnesses testified that

9

the settling ponds could not contain the discharge from a wash plant running at 100 lcy/hr. The evidence to the contrary shows that the plant was capable of operating at a faster rate, but does not address the settling ponds, and therefore does not address the crux of the Board's decision.[4]

Considering the record as a whole, we find that substantial evidence supported the Board's findings relating to the wash plant rate, and that its decision was not arbitrary or capricious.

V.

The Garcias continue to press the cost arguments that the Board and the district court found untimely. Specifically, they challenge the Board's findings with regard to fuel and lubricant costs, hours of operation for the wash plant, and permit costs.

We agree with the Board that these arguments are untimely and therefore waived. "Simple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under

---

[4] The Garcias also argue that the Board did not explain why it singled out the wash plant rate finding for reversal, and not the other findings. However, the Board discussed at some length all of the ALJ's findings. It singled out the wash plant rate because that was the only finding "not supported by the record." 161 IBLA at 241.

10

its practice." United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952); 1000 Friends of Maryland v. Browner, 265 F.3d 216, 227-28 (4th Cir. 2001). It would be odd indeed to find an agency's decision arbitrary and capricious because the agency refused to consider an argument that nobody made.

The Garcias argue that submitting an argument with a petition for reconsideration renders it timely. This argument fails. The Board's regulation for petitions to reconsider states that the "Board may reconsider a decision in extraordinary circumstances for sufficient reason." 43 C.F.R. § 4.403 (2009). The accompanying release states:

> This provision reinforces the Board's expectation that parties will make complete submissions in a timely manner during the appeal, not afterward on reconsideration. This expectation is justified because almost all those who petition for reconsideration have already had two full opportunities to present their cases to the Department: once before the initial decisionmaker and again before the Board. In general, the Board does not give favorable consideration to a petition for reconsideration which merely restates arguments made previously or which contains new material with no explanation for the petitioner's failure to submit such material while the appeal was pending. Because parties recognize their obligations in this regard, relatively few petitions for reconsideration are ever filed. Even so, the Board rarely finds it necessary to grant them, and even more rarely reverses itself.

52 Fed. Reg. 21307-01, 21307 (June 5, 1987). Plainly, the "appropriate time under [the Board's] practice" for the Garcias to raise their cost arguments was in the appeal to the Board,

11

and not in a petition for reconsideration. See L.A. Tucker Truck Lines, 344 U.S. at 37.

The Garcias contend that they had no reason to submit their cost arguments on appeal because they were content with the ALJ's decision below. But the Board reviews the ALJ's factual findings de novo, and, therefore, the Garcias would have been prudent to point out any errors that inflated the costs of their mining operation. Instead, it appears that they argued that it is the Board that should defer to the ALJ, and they offered no evidence or arguments about the specific errors that the ALJ made in his initial cost assessments. It is unclear whether this was inadvertent or part of a strategy to shore up the ALJ's credibility, but whatever the reason, we cannot consider the Garcias' cost arguments now.[5]

VI.

Finally, the Garcias argue that the Board held them to an incorrect legal standard by requiring them to demonstrate to a certainty that their mine would yield an immediate profit.

---

[5] The Garcias also contend that the Board arbitrarily refused to grant their petition for reconsideration. This argument lacks merit. The Garcias did not persuade the Board that they had good reason for failing to make their cost arguments on appeal, and the Board thus correctly explained that the Garcias arguments for reconsideration did not amount to the type of "extraordinary circumstances" that merit reconsideration under its regulations.

12

The Supreme Court has held that the test for determining whether a claimant has discovered a valuable mineral deposit is whether "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine."  United States v. Coleman, 390 U.S. 599, 602 (1968) (quoting Castle v. Womble, 19 L.D. 455, 457 (1894)).  In Coleman, the Supreme Court supplemented this "prudent-person test" with a "marketability test," requiring applicants to show "that the mineral can be extracted, removed and marketed at a profit."  Id. at 600.

The Court further stated that:

> While it is true that the marketability test is usually the critical factor in cases involving nonmetallic minerals of widespread occurrence, this is accounted for by the perfectly natural reason that precious metals which are in small supply and for which there is a great demand, sell at a price so high as to leave little room for doubt that they can be extracted and marketed at a profit.

Id. at 603.  Applying the Coleman Court's dictum about precious metals, both the Ninth Circuit and the Board have held that:

> Although the claimant of a mining claim located for a precious metal (gold) need not prove that the gold can presently be extracted, removed, and marketed at a profit, evidence of the costs and profits of mining the claim may be properly considered in determining whether a person of ordinary prudence would be justified in the further investment of his labor and capital.

13

Moon Mining Co. v. Hecla Mining Co., 161 IBLA 334, 361 (2004) (citing Lara v. Sec'y of the Interior, 820 F.2d 1535, 1541 (9th Cir. 1987)).

Citing these authorities, the Garcias argue that the marketability test does not apply to claims involving precious metals. We agree that, when precious metals are concerned, the applicant does not have to demonstrate present marketability, and that the correct legal standard for precious metal claims is whether, considering the likely costs and revenues, a prudent person would expend labor and capital to mine the claim. This standard permits an applicant to point to the likely future price of a precious metal to demonstrate that a prudent person would mine that metal even if market conditions at the moment were not favorable.

Because "an administrative order cannot be upheld unless the grounds upon which the agency acted . . . were those upon which its action can be sustained," we must vacate the judgment of the district court, affirming the decision of the Board. SEC v. Chenery Corp., 318 U.S. 80, 95 (1943). We remand the case to the district court with instructions to remand to the Board to consider the Garcias' claim under the correct legal standard.

VII.

The judgment of the district court is

VACATED AND REMANDED.