Robert L. **MENDENHALL**, Plaintiff,

v.

The **UNITED STATES** of America, The United States Department of Interior, and Cecil D. Andrus, Secretary of the Interior and Edward F. Spang, State Director of Nevada Bureau of Land Management, Defendants.

No. CV–R–80–146–ECR.

United States District Court, D. Nevada.

Dec. 30, 1982.

Foley Brothers, Las Vegas, Nev., and Hale C. Tognoni, Phoenix, Ariz., for plaintiff.

Lamond R. Mills, U.S. Atty., Reno, Nev., for defendants.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

This matter has come before the Court by reason of the plaintiff's objections to the report and recommendation of U.S. Magistrate Phyllis H. Atkins, which was filed March 31, 1982. The report and recommendation was made after considering the plaintiff's motion to set aside agency action and the motion to dismiss of defendant United States of America.

This Court has made a *de novo* determination as to the portions of the Magistrate's report and recommendation that the plaintiff has objected to. The entire record before the Magistrate has been studied, oral argument was heard on August 9, 1982, and additional evidence and legal briefs submitted post-hearing by leave of Court have been examined.

In February of 1955, predecessors in interest of the plaintiff located two placer claims (often referred to as Charleston 24/39 and Charleston Spur No. 1) in Clark County, Nevada. Notices of location were duly recorded in the Office of the County Recorder. The claims covered deposits of sand and gravel.

Congress subsequently enacted 30 U.S.C. § 611, which declared that common varieties of sand and gravel would not be deemed valuable minerals after July 23, 1955, so that they could not serve as the basis for any mining claim located subsequent to that date.

Possession of the two subject claims was obtained through foreclosure by Mr. Frank R. Sullivan, in 1959. The United States filed a complaint, in November 1965, contesting the validity of the mining claims. Essentially, the Government contended that no valuable minerals were found within the claims because the sand and gravel had not been and could not be marketed profitably on or before July 23, 1955.

Acting pursuant to a power-of-attorney, civil engineer Robert J. McNutt answered the complaint for Mr. Sullivan. The Nevada land office of the U.S. Bureau of Land Management, Department of Interior, declared the claims null and void. One of the reasons given was that Mr. McNutt had not qualified, as a non-lawyer, to practice before the Department of Interior. Mr. McNutt filed an appeal of the decision on behalf of Mr. Sullivan. The Department, by letter dated May 22, 1967, advised Mr. Sullivan that the appeal was subject to dismissal because his agent and attorney-in-fact, Mr. McNutt, still had not shown him-

self qualified to practice before the Department. The letter even stated: "From the nature of the showing which he has attempted to make, it is obvious that Mr. McNutt is not qualified to practice before the Department." Nevertheless, it went on to advise: "However, the Department has adopted the practice of accepting appeals filed by an attorney-in-fact when his action has been ratified by the appellant."

Mr. Sullivan executed a formal ratification form before a notary public, in which he ratified and adopted the documents which had been filed on his behalf by Mr. McNutt. They had been entitled "Answer to Complaint", "Additional Showing as Required", "Notice of Appeal" and "Appeal." The letter accompanying the ratification form gave Mr. Sullivan's return address as "Albright & Heaton, Attorneys at Law, 300 Title Insurance & Trust Building, 309 South Third Street, Las Vegas, Nevada 89101." The Department thereupon remanded the case to Hearing Officer (later renamed Administrative Law Judge) Dean F. Ratzman. He held a hearing on February 18, 1971, at which Mr. McNutt represented Mr. Sullivan. Mr. Sullivan testified on his own behalf. He already had seen the Government's proposed exhibits, and told Mr. Ratzman that they didn't reflect about $15,000 worth of work he (Sullivan) had done on the claims, nor did they show "... what I have done in order to market this gravel." The Hearing Officer admitted the exhibits without objection, with the understanding that Mr. Sullivan could testify as to what he had done to market the gravel, and he and Mr. McNutt could mark up the exhibits to illustrate other work that had been done, as revealed by testimony.

The Government's witness before the Hearing Officer was Thomas E. Schessler, a mining engineer and lands and minerals staff officer with the Las Vegas District of the Bureau of Land Management. He testified that, during the four years he had been stationed in Las Vegas, he had inspected twenty to thirty sand and gravel claims in the Las Vegas Valley. He also had studied a United States Geological Survey publication on Clark County and had researched work done by predecessor mining engineers in the Las Vegas office. Further, he had examined a mosaic aerial photograph of the area in which Mr. Sullivan's two claims were situate. The picture taking had occurred during an April 15, 1965, flight.

Mr. Schessler said that he had personally inspected the two claims on January 22, 1971, and February 11, 1971. A geologist from his office had accompanied him on the first inspection trip; Mr. Schessler had been alone during the second trip. He testified that he had driven onto the claims in a four-wheel drive vehicle. In particular, he had been looking for "improvements." He had found the two major bulldozer cuts. However, he reported that all of the materials that had been excavated seemed to be piled up near the cuts. Little or none appeared to have been removed.

The gravel deposits on the claims were described by Mr. Schessler as partly bank gravel, and the remainder as stream gravel. He said they were similar to other limestone-dolomite deposits in the Las Vegas Valley. The witness reiterated that neither his aerial photograph study nor his ground inspections revealed the removal of any significant amounts of materials.

On cross-examination by Mr. McNutt, Mr. Schessler acknowledged that he had been in the Las Vegas area only since 1966. As a result, his knowledge of sand and gravel sales in the area had been derived from a review of market sales. He conceded that large quantities of sand and gravel had been removed from land bordering Mr. Sullivan's claims.

Mr. Sullivan then testified on his own behalf. He said that he had had a rock crusher on the claims until 1957. Processing of the materials extracted had been done in North Las Vegas, where they had been taken by truck. All of the materials had been taken from a draw or wash, where they had been deposited during times of flood. Mr. Sullivan reported that a major flood had occurred in 1958. He believed that the new materials deposited by that

flood could have covered all evidence of the excavating work he had done previously.

Mr. Schessler then was called back to the stand. He testified that characteristic color patterns would show in an aerial photograph of an area where an excavation had been followed by new flood deposits. Such color patterns are caused by the new growths of vegetation on those deposits. The aerial photograph of the two claims did not exhibit the characteristic color patterns that would support Mr. Sullivan's belief, in the expert witness' opinion. Nevertheless, he did not rule out the possibility that a subsequent flood could have obliterated Mr. Sullivan's excavations in the draw.

Hearing Examiner Ratzman authorized the filing of post-hearing briefs by both sides. Attached to the brief filed on behalf of Mr. Sullivan were four unsworn statements from third parties re the hauling of gravel from his two claims. Two of the statements claimed that gravel had been hauled prior to July 23, 1955.

Hearing Examiner Ratzman's written decision was dated December 28, 1971. It declared the two mining claims to be null and void. He pointed out that the evidence revealed that there were large quantities of sand and gravel within the two claims; Charleston 24/39 alone could easily contain a million cubic yards. Further, he discussed in some detail the evidence as to whether sand and gravel had been removed and marketed from the claims prior to July 23, 1955. This evidence included the four aforementioned statements.

Mr. Ratzman's decision set forth the principles by which he had judged the case. First the Government had the burden of establishing a *prima facie* case. Then the burden shifted to the claimant, Mr. Sullivan, to show by a preponderance of evidence that a discovery of valuable minerals had been made. This required evidence demonstrating that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success in developing a valuable mine. Further, Mr. Ratzman's decision acknowledged that the "marketa-

bility test" had to be met. This necessitated evidence "showing that materials could have been extracted, removed and marketed at a profit" by July 23, 1955. One way to make the showing would be for the claimant to present evidence that he had entered the race to supply the local demand for sand and gravel. The Hearing Officer found that the only significant utilization of sand and gravel prior to said date had been from nearby claims, but not from the two claims here involved. He stated that the limited demand for those materials had been readily satisfied from existing sand and gravel operations. The decision summed up his reasons for finding the two claims null and void as follows: "The contestee has failed to show by the preponderance of the evidence (i) that any quantity of sand and gravel actually was marketed from the contested claims prior to July 23, 1955, or (ii) that under known marketing conditions, there was an outlet for profitable disposal of a substantial quantity of sand and gravel from the two contested claims prior to July 23, 1955."

Mr. Sullivan retained attorney Keith C. Hayes to appeal the decision of Hearing Officer Ratzman. Mr. Hayes' primary contention was that due process required the decision to be set aside and that Mr. Sullivan be given another opportunity to present his case, in order that additional evidence might be considered. The reason given for this argument was the representation of Mr. Sullivan by non-lawyer Mr. McNutt before the Hearing Examiner. Attorney Hayes argued that neither Sullivan nor McNutt had been aware of the burden of proof imposed upon the claimant at the time of the hearing.

The appeal was considered by a three-man panel of the Interior Board of Land Appeals (IBLA), which affirmed the Hearing Officer's decision on February 6, 1973, in an unanimous opinion. It pointed out that Department of Interior regulations permitted a claimant to be represented by a lawyer, but did not require such representa-

tion. The opinion declares that in an administrative proceeding to determine the validity of a mining claim there is no denial of due process because the claimant is not represented by a lawyer; all that due process implies is notice and a hearing. The panel emphasized that Mr. Sullivan chose not to engage the services of a lawyer for the hearing, so that he "may not now be heard to complain."

The Bureau of Land Management duly recorded a notice that the two mining claims had been adjudicated null and void. The recordation was made in the official records of the Clark County Recorder on February 26, 1973.

The plaintiff purchased the claims from Mr. Sullivan on March 7, 1979. By affidavit, he represents that he took an option on the two claims from Mr. Sullivan, who said that he owned them. Then, the plaintiff declares in his affidavit, he "went to the County Recorder and searched the record for evidence that Sullivan owned the Charleston claims, and found nothing that would indicate that the claims were not in good standing and then exercised my option and went to producing aggregate therefrom." Further evidence presented to this Court by the plaintiff establishes that he has made a large investment in operating equipment on the claims and has been producing vast amounts of sand and gravel materials there.

The plaintiff has several objections to the Magistrate's report. First, he disagrees with the Magistrate's holding that he is limited, in this U.S. District Court action, to the issue raised before the IBLA; namely, the lack of due process resulting from Mr. Sullivan's not having a lawyer represent him before Hearing Officer Ratzman. He further objects to the Magistrate's conclusion that issues as to the validity of the claims had been waived by Sullivan's failure to raise them in his appeal to the IBLA. In addition, he takes issue with the Magistrate's conclusion that the administrative record reflects no evidence of any sales of

or ability to sell sand and gravel from the claims prior to Mr. Sullivan's acquisition of them in 1959. The plaintiff objects in toto to Magistrate Atkins' recommendation to this Court. She recommends that the plaintiff's motion to set aside agency action be denied, and that defendant United States' motion to dismiss the action be granted.

*Discussion:*

This Court essentially is reviewing the IBLA's affirmation of the Hearing Officer's decision adverse to the plaintiff. The scope of this review is quite limited. It consists of an examination to determine whether the agency action was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with the law. *Melluzzo v. Watt,* 674 F.2d 819, 820 (9th Cir.1982). In doing so, this Court does not reweigh the evidence or substitute its judgment for that of the administrative agency, *Rawls v. United States,* 566 F.2d 1373, 1376 (9th Cir.1978); *Baker v. United States,* 613 F.2d 224, 226 (9th Cir.1980).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the agency's conclusion. *United States v. Smith Christian Min. Enterprises,* 537 F.Supp. 57, 62 (D.Or.1981). It is something less than the weight of the evidence; the possibility of reaching an opposite conclusion from the evidence does not prevent the administrative agency's holding from being supported by substantial evidence. *Ibid.* The record as a whole is looked at, *Multiple Use, Inc. v. Morton,* 504 F.2d 448, 452 (9th Cir.1974), rather than merely the evidence that supports the agency decision. *Charlestone Stone Products Co., Inc. v. Andrus,* 553 F.2d 1209, 1213 (9th Cir.1977), rev'd on oth. gds. 436 U.S. 604, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978). The claimant had to produce credible evidence, for the agency was not required to give any weight to testimony or other evidence which it did not believe. *Osborne v. Hammit,* 377 F.Supp. 977, 985 (D.Nev.1964).

The testimony of the Government's expert, Mr. Schessler, constituted sufficient substantial evidence to constitute a *prima facie* case. He testified that he had examined the claims and the sand and gravel there could not have been mined and marketed at a profit on or before July 23, 1955. His testimony was not contradicted by evidence that substantial amounts of the materials had been mined or marketed prior thereto. *See McCall v. Andrus,* 628 F.2d 1185, 1189 (9th Cir.1980); *see also Russell v. Peterson,* 498 F.Supp. 8, 9–10 (D.Or.1980).

If supported by substantial evidence in the record, the agency's findings of fact are conclusive. *Converse v. Udall,* 399 F.2d 616, n. 1 (9th Cir.1968). Therefore, judicial review is not procedurally a trial *de novo. Doria Min. & Engineering Corp. v. Morton,* 608 F.2d 1255, n. 5 (9th Cir.1979). Judicial review is confined to the agency record, and it is not appropriate for the reviewing court to consider new evidence. *United States v. Smith Christian Min. Enterprises,* 537 F.Supp. 57, 63 (D.Or.1981). An exception is recognized when the party seeking review alleges that he has discovered new evidence showing that the administrative decision was obtained by fraud. *Doria Min. & Engineering Corp. v. Morton, supra* at 1258. No such allegation has been made here.

Absent exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time. *Getty Oil Co. v. Andrus,* 607 F.2d 253, 256 (9th Cir.1979). It is for the agency, not the courts, to determine whether the administrative record should be reopened to consider new facts, unless the failure to reconsider can be characterized an abuse of discretion. *Nance v. Environmental Protection Agency,* 645 F.2d 701, 717 (9th Cir. 1981). Since the IBLA refused attorney Hayes' request that the record be reopened to allow the introduction of further evidence, this Court allowed additional exhibits to be submitted in order to help determine whether the IBLA's refusal was an abuse of discretion. Although a statistical exhibit does indicate a significant growth in demand for sand and gravel in the Las Vegas Valley tonnagewise as early as 1955, the same exhibit shows no increase in average price per ton until 1958. The inference is that existing sources of supply easily accommodated the larger demand in 1955. Even if the new evidence had been considered by the Hearing Officer or the IBLA, it would not have been manifestly unjust for the agency to have declared the claims null and void for failure of the claimant to show marketability with a reasonable expectation of profit.

The trier of fact has not abused its discretion unless there is a definite and firm conviction that it committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir.1976). At least two factors are present here that prevent such conviction from arising. First, the agency originally balked at allowing Mr. McNutt to represent Mr. Sullivan. It required a deliberate ratification by Sullivan of McNutt's representation before the latter was allowed to practice before the Hearing Officer. The right to counsel can be waived. *United States v. Weiner,* 578 F.2d 757, 774 (9th Cir.1978). The due process right to counsel in a civil action ordinarily requires no more than a right to retain counsel if one so desires. *See Goldberg v. Kelly,* 397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). In a review of a Securities and Exchange Commission decision, the Ninth Circuit denied the petitioner's contention that he should be granted a new hearing because he had failed to avail himself of counsel before a hearing examiner. *Nees v. Securities and Exchange Commission,* 414 F.2d 211, 221 (9th Cir.1969). The petitioner's request for a new hearing was denied because (1) he had been afforded an opportunity to employ counsel for the hearing, (2) no one deprived him of that right, and (3)

the Government was not obligated to provide him with counsel. *Ibid.* The same may be said of Mr. Sullivan. Since the plaintiff stands in the shoes of Sullivan, the identical reasoning applies to him.

■■■■■ The second factor which militates against this Court holding that the administrative agency abused its discretion concerns the plaintiff directly, and not as the successor in interest of Mr. Sullivan. That factor is the effect of Nevada's recording statutes. The notice that the two claims had been adjudicated null and void was properly recorded. *See* NRS 247.120, NRS 517.110. From the time of its recordation it imparted notice to all persons of its contents, so that subsequent purchasers are deemed to purchase and take with notice. NRS 111.320; NRS 247.190. As a result, the plaintiff does not have the status of either a bona fide purchaser, *Hewitt v. Glaser Land & Livestock Co.,* 97 Nev. 207, 626 P.2d 268, 269 (1981), or a good faith purchaser. *Allison Steel Manufacturing Co. v. Bentonite, Inc.,* 86 Nev. 494, 471 P.2d 666, 669 (1970). He is deemed to have knowledge of the contents of the recorded notice and is not permitted to disclaim that knowledge. *See White v. Moore,* 84 Nev. 708, 448 P.2d 35, 36 (1968); *All Am. Van & Storage v. DeLuca Realty, Inc.,* 95 Nev. 253, 592 P.2d 951 (1979). It is well established that one who is not a bona fide purchaser can acquire no greater interest in the property than that which the grantor had to convey. *Willis v. Stager,* 257 Or. 608, 481 P.2d 78, 83 (Or.1971). At the time the plaintiff purchased Mr. Sullivan's purported mining claims, the latter had no such interest to convey.

The plaintiff's objection to the portion of the Magistrate's report that declares there was no evidence in the transcript of any sales or ability to sell from the claims prior to 1959 is technically well taken. Some such evidence is to be found in the administrative record. However, as discussed above, there is substantial evidence to support the agency action nevertheless. The upshot is that proving his point avails the plaintiff nothing.

■■■ The correct standards of law were applied by the Hearing Examiner. The prudent man test and the marketability test both were applicable. *Andrus v. Shell Oil Co.,* 446 U.S. 657, n. 4, 100 S.Ct. 1932, n. 4, 64 L.Ed.2d 593 (1980); *Edwards v. Kleppe,* 588 F.2d 671, 672 (9th Cir.1978). The marketability test is usually the critical factor in cases involving nonmetallic minerals of widespread occurrence. *United States v. Coleman,* 390 U.S. 599, 603, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968). In his brief filed subsequent to the February 18, 1971, hearing before Hearing Officer Ratzman, Mr. Sullivan acknowledged that: "Subject to the usual minor differences, the sand and gravel material on the two contested claims is similar to and is useable for the same general construction and building purposes as other sand and gravel deposits in the Las Vegas area." The fact that the Las Vegas Valley is full of sand and gravel has been noted. *Foster v. Seaton,* 271 F.2d 836, 838 (D.C.Cir.1959).

The fact that the plaintiff has demonstrated that he has been marketing large quantities of sand and gravel from the claims doesn't establish that the materials could have been marketed with a reasonable expectation of profit on or before July 23, 1955. The burden of showing such marketability rested on Mr. Sullivan. *See Verrue v. United States,* 457 F.2d 1202, 1203 (9th Cir.1972); *Multiple Use, Inc. v. Morton,* 353 F.Supp. 184, 190, 195 (D.Ariz.1972), aff'd 504 F.2d 448 (9th Cir.1974).

As modified and supplemented hereinabove, the Court accepts the Magistrate's report and the findings contained therein. The Court accepts the recommendation of the Magistrate.

IT IS, THEREFORE, HEREBY ORDERED that the plaintiff's motion to set aside agency action be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the motion to dismiss of defendant United

452

States of America be, and the same hereby is, GRANTED.